UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6002-CIV-(UNGARO-BENAGES/Brown)

DENISE BROOKINS,

    Plaintiff

v.

MARTY SHOES, INC.,

    Defendant.

_____/

### DEFENDANT'S STATEMENT OF FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Marty Shoes, Inc. ("Marty Shoes"), through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Southern District of Florida Local Rules 7.1 and 7.5, submits its Statement of Facts as to which there is no genuine issue to be tried, in support of Defendant's Motion and Memorandum of Law for Summary Judgment.

1. Marty Shoes was founded in 1974 by Martin Samowitz, who is now over eighty years old and remains active in the management of the company. The first Marty's Shoes Outlet store was in Little Ferry, New Jersey. The current President of Marty Shoes is John Adams, who began with Marty Shoes as a stockboy and became the manager of the first Marty's Shoes store.

2. Presently, Marty Shoes operates 89 retail stores throughout New Jersey and in New York, Connecticut and Florida, including a Marty's Shoes store in the Sawgrass Mills Mall, in Sunrise, Florida, where Plaintiff was employed from December of 1995 until June of 1996.

3. Marty Shoes hired Plaintiff in December of 1995 to work as a salesperson in the Sawgrass Mills Mall store. (Plaintiff's Depo., 27/22-25; 28/24-29/2).

4. In early 1996, Roma Rybitwa was promoted to Store Manager. (Plaintiff's Depo., 30/15-19; Dzioba Declaration, ¶ 3 (Exhibit 2)).

5. In March of 1996, Plaintiff began to have attendance problems, which Plaintiff says were a result of a conflict between her work schedule and her class schedule at Broward Community College (BCC), where she was a student. (Plaintiff's Depo., 58/25-59/10). There

were no conflicts between Plaintiff and Ms. Rybitwa until Plaintiff began having attendance problems. (Plaintiff's Depo., 58/15-59/1).

6. Plaintiff says she had been scheduled to work at times when she was also scheduled to be in class. (Plaintiff's Depo., 59/2-24). Plaintiff was attending class about twelve hours a week and working more than twelve hours a week. (Plaintiff's Depo., 60/21-62/7). Plaintiff complained to Ms. Rybitwa that she had been scheduled to work at times that conflicted with her class schedule, and Ms. Rybitwa changed Plaintiff's work schedule to accommodate her. (Plaintiff's Depo., 59/21-60/4).

7. Shortly thereafter, there was another conflict between Plaintiff's class schedule and her work schedule. (Plaintiff's Depo., 61/8-10; 62/1-11). Plaintiff complained to Ms. Rybitwa, who asked to see Plaintiff's class schedule and again changed Plaintiff's work schedule around her class schedule in order to accommodate her. (Plaintiff's Depo., 61/13-22).

8. After Ms. Rybitwa saw a copy of Plaintiff's class schedule, there was never another conflict between it and Plaintiff's work schedule. (Plaintiff's Depo., 62/12-16).

9. Plaintiff began to have regular conflicts and arguments with Ms. Rybitwa. In the three or so remaining months before Plaintiff was fired in late June of 1996, Plaintiff had more than one argument a day with Ms. Rybitwa. (Plaintiff's Depo., 182/4-6). Plaintiff had conflicts with Ms. Rybitwa over job methods, Plaintiff's use of the store phone to make a personal call, Plaintiff's work attire, the way Plaintiff answered the store phone, Plaintiff's leaving the store to cash her paycheck, and on an occasion when Ms. Rybitwa believed four customers had stolen a pair of shoes from the store. (Plaintiff's Depo., 182/15-25).

10. Plaintiff lost her temper with Ms. Rybitwa numerous times. (Plaintiff's Depo., 183/1-5)

11. Throughout the last few months of Plaintiff's employment, Ms. Rybitwa repeatedly expressed concerns about her working relationship with Plaintiff to then-District Manager Stanley Dzioba. (Dzioba Declaration, ¶ 6)(Exhibit 2). Ms. Rybitwa described repeated conflicts and arguments with Plaintiff as well as Plaintiff's refusal to adhere to work rules, Plaintiff's use of workplace profanity, and her own personal fear of Plaintiff. (Dzioba Declaration, ¶ 6)(Exhibit 2). Toward the end of Plaintiff's employment, Ms. Rybitwa told Mr. Dzioba that she had deliberately scheduled Plaintiff to work hours other than those when Ms.

Rybitwa was on duty, so she could avoid working with Plaintiff. (Dzioba Declaration, ¶ 7)(Exhibit 2).

12.  Mr. Dzioba advised Ms. Rybitwa to fire Plaintiff, but Ms. Rybitwa resisted – fearing that Plaintiff would react aggressively and harm her. (Dzioba Declaration, ¶ 8)(Exhibit 2). Ms. Rybitwa ultimately arranged for the termination of Plaintiff's employment while Ms. Rybitwa was away on vacation. (Dzioba Declaration, ¶ 9)(Exhibit 2).

13.  The week she was fired, Plaintiff visited the Sawgrass Mills Mall store and spoke with Ms. Rybitwa. Ms. Rybitwa told Plaintiff that she was going on vacation and that Plaintiff should speak to Stanley Dzioba about her work schedule for the following week. (Plaintiff's Depo., 47/18-48/5). Then next day, Plaintiff visited the Sawgrass Mills Mall store where a note had been left for her indicating she should contact Mr. Dzioba. (Plaintiff's Depo., 48/19-49/16)(Exhibit 5). Plaintiff called Mr. Dzioba, who Plaintiff says informed her that her employment was terminated. (Plaintiff's Depo., 46/16-19).

14.  Plaintiff was fired from her job with ADT Automotive/Lauderdale-Miami Auto Auction ("ADT") in June of this year after being accused of harassing a coworker and saying inappropriate things to him. Prior to being fired from ADT, Plaintiff had been repeatedly disciplined for insubordination and confrontation with a supervisor. (Composite Exhibit 7).

15.  Plaintiff was fired from a job she held with Sally's Beauty Supply after being accused of poor performance and a cash shortage.

16.  Earlier in the year she came to work for Marty Shoes, Plaintiff was barred from attending a course at Broward Community College for "willful disobedience or defiance toward college personnel," "disorderly [ ] conduct," and profanity, arising from an incident in which Plaintiff called her instructor a "bitch." (Exhibit 10).

17.  Marty's Shoes strives to provide its customers with a friendly atmosphere. (Exhibit 16). The company expects that its employees will be cooperative with, and respectful to, supervisors and managers. (Dzioba Declaration, ¶ 7)(Exhibit 2). Marty Shoes demands teamwork and professional conduct from its workforce. (Dzioba Declaration, ¶ 7)(Exhibit 2).

18.  The initial reduction in Plaintiff's work hours did not begin until Ms. Rybitwa was Store Manager for two months, and did not begin until Plaintiff twice asked for her schedule

to be changed because of a conflict with her class schedule at BCC. (Plaintiff's Depo., 58/15-59/1).

      19.    Plaintiff averaged twenty-two (22) hours a month in January and February of 1996 – while Ms. Rybitwa was Store Manager. (Composite Exhibit 3).

      Respectfully submitted,

**HOLLAND & KNIGHT LLP**
Attorneys for Defendant
One East Broward Boulevard, Suite 1300
Post Office Box 14070 (33302-4070)
Fort Lauderdale, Florida 33301
(954) 525-1000
(954) 463-2030 – fax
email: egabriel@hklaw.com

By: _____
Thomas H. Loffredo, for the Firm.
Florida Bar No. 870323
Eric K. Gabrielle, for the Firm.
Florida Bar No. 160725

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by **hand delivery** to Stewart L. Karlin, Esq., Attorney for Plaintiff, 400 S.E. 8th Street, Fort Lauderdale, Florida 33316, this **3rd** day of November, 2000.

HOLLAND & KNIGHT LLP
Attorneys for Defendant
One East Broward Boulevard
Suite 1300
Post Office Box 14070
Fort Lauderdale, Florida 33302-4070
(954) 525-1000
(954) 463-2030 – fax

By: _____
Thomas H. Loffredo, for the Firm.
Florida Bar No. 870323
Eric K. Gabrielle, for the Firm.
Florida Bar No. 160725