UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6002-CIV-UNGARO-BENAGES

DENISE BROOKINS,

        Plaintiff,

v.

MARTY SHOES, INC.,

        Defendant.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### 1.    Introduction

Plaintiff, DENISE BROOKINS, through undersigned counsel, hereby submits the following Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. Plaintiff's affidavit which is Attached as Exhibit "1" is deemed incorporated into this memorandum of law.

### 2.    Factual Statement

Plaintiff commenced suit in State Court claiming that she was discriminated against by reason of her race (African-American) and retaliation. Plaintiff was employed as a part-time sales person at Marty's Shoes from approximately November, 1995 to June, 1996. When she was initially employed, she worked approximately twenty hours a weeks. It should be noted that she was the only African-American employed in the store and that a number of employees were hired by Roma Rybitha but none of them were African-American. (plaintiff's affidavit paragraph number "1")

Plaintiff's initial supervisor was Carmen plaintiff and had no significant problems until a new supervisor Roma Rybitha (Caucasian-Polish) became the store manager. (plaintiff's affidavit

1

paragraph number "2") Shortly thereafter, in approximately one or two months, plaintiff noticed a significant difference in the way she was being treated as opposed to the other staff who were either Caucasian or Hispanic. (Plaintiff's affidavit paragraph "3")

For example, plaintiff was not allowed to go to the rest room without first notifying the manager. (Plaintiff's affidavit paragraph "4")

Plaintiff was the only employee that was not allowed to answer the employer's telephone. (Plaintiff's affidavit paragraph "5") Plaintiff was the only employee that was subjected to biased stereotyping by Roma Rybitha. Plaintiff was called a street person, thug, you people and drug addict and am not the right person to work there. (Plaintiff's affidavit paragraph "6")

At the end of plaintiff's shift she was the only employee that had to display her shoes to Roma Rybitha to make sure that she was not stealing. (Plaintiff's affidavit paragraph "7") Plaintiff was the only employee that could not take a reasonable lunch-break. In other words, her lunch breaks were closely monitored. In this small store, she never observed Roma Rybitha monitor other employees' lunch break. (Plaintiff's affidavit paragraph "8")    Plaintiff was the only employee in the store that could not go to the front cashier's for shoe assistance. Other employees such as Gonzalez, Torres, Torres, Ching, Anna and Peter were told not to talk to plaintiff and thus she was isolated from her coworkers. Plaintiff's breaks were limited to 10 minutes break time when the non-African employees such as Gonzalez, Torres, Torres, Ching, Anna and Peter had 15-30 minutes of break time. (Plaintiff's affidavit paragraph "9", "10" and "11")

In addition, store privileges were not the same either. For example, shoes that were damaged were discounted to the customer but plaintiff was not allowed to discount the shoes to her customers. However, plaintiff personally observed other non-African employees who were allowed to give significant discounts to their customers such as Gonzalez, Torres, Torres, Ching, Anna and Peter. (Plaintiff's affidavit paragraph "12")

2

Plaintiff was told by her store manager (Roma) to closely observe African-Americans when they were shopping at the store. (Plaintiff's affidavit paragraph "13") During the last two months of plaintiff's employment, her hours began to be steadily reduced. Plaintiff complained to the District Manager, Stanley Dzioba who refused to acknowledge her complaints of racial discrimination regarding her store manager and did not investigate plaintiff's complaints. In addition, plaintiff also complained to Mr. Adams, V.P. in Marty's corporate offices in writing as well (See Exhibit "A") a copy was sent to the district manager. Immediately after plaintiff's complaints, she was retaliated against by having her hours reduced even further. In fact, during the last weeks of plaintiff's employment, she was scheduled to work only one hour a week. (Plaintiff's affidavit paragraph "14")

This was profoundly humiliating to plaintiff that the District Manager and Store Manager would schedule her for only one hour a week. Thus, plaintiff was forced in order to keep her job to come to work for one hour, once a week. Plaintiff saw the schedule posted almost every week, and no other employee (she was the only African-American employee in the store and numerous employees were hired by the store manager, Roma Rybitha, and none were African-Americans). To plaintiff's knowledge non of these employees had ever been scheduled to work one hour a week. (See Exhibit "B"- plaintiff's wage statements) (Plaintiff's affidavit paragraph "14")

Although there is policy of providing written counseling for performance and conduct that falls below standard, plaintiff never received a written counseling that her conduct or performance was somehow deficient except coming in late once. (Defendant Exhibit "18"). The reason plaintiff was never warned is that performance and conduct were at or above standards.

## ARGUMENT

### POINT I

### DEFENDANT HAS THE BURDEN OF SHOWING THAT
### THERE ARE NO GENUINE MATERIAL ISSUES OF FACT

In connection with a motion for summary judgment, the Court's function is to determine

3

whether a material factual issue exists, not to resolve any existing factual issues. United States v. Diebold Inc., 369 U.S. 654 (1962). A court may grant summary judgment under Fed.R.Civ.P. 56(c) only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where, as here, the non-movant bears the ultimate burden to prove at trial that the defendant discriminated against plaintiff, he may defeat the summary judgment motion by procuring sufficient specific facts to establish that there is a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Also, the party moving for summary judgment has the burden of showing the absence of genuine issue of material fact. Weinberger v. Hynson, 412 U.S. 609 (1973). In addition, in ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion. Welch v. Celotex Corp. 951 F2d 1235, 1237 (11 Cir. 1992) Hoffman v. Allied Corp, 912 F2d 1379 (11th Cir. 1990), Eastway Construction Corp. v. City of New York, 762 F.2d 243, 249 (2d Cir. 1985), cert. denied.

In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. Welch v. Celotex Corp. 951 F2d 1235, 1237 (11 Cir. 1992); Rollins v. TechSouth, Inc., 951 F2d 1525, 1528 (11th Cir. 1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exists genuine issues of material facts. Matushita Electric Industrial Co. v. Zenith Radio Corp. 475 U.S. 574, 586-87, 106 S.Ct. 1328, 1355-56, 89 L.Ed. 2d 538 (1086); Clark v. Coats & Clark, Inc. 929 F2d 604, 608 (11th Cir. 1991).

Applicable substantive law will identify those facts that are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). Genuine disputes are

4

those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record. Matushita, 475 U.S. at 586-87, 106 S. Ct., at 1355-56. It is not part of the court's function, when deciding a motion for summary judgement to decide issues of material fact, but determine whether such issues exist to be tried. Anderson, 477 U.S. at 249, 106 S.Ct. at 2135. The court must avoid weighing conflicting evidence or making credibility determinations. Id, at 255, 106 S.Ct. at 2513- Instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor". Where a reasonable fact finder may "draw more than one inference from the facts, and the inference creates a general issue of material fact, then the court should refuse to grant summary judgment." Barfield v. Briertonm, 883 F2d 923, 933-34 (11th Cir.1989) (citation omitted).

The Court have recognized that in discrimination cases, an employer's true motivations are particularly difficult to ascertain, see United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "there will seldom be `eye witness' testimony as to the employer's mental processes"), thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage. Lowe v. City of Monrovia 775 F.2d 998, 1009 (9th Cir.1985). For summary judgment purposes one must show that the reasons articulated  to terminate Ms. Brookins are in dispute or there is a factual dispute as to whether there was disparate treatment in connection with her termination.. As the Supreme Court recently stated that one only must show the legitimate reasons are not the true reasons for his termination. Put simply that in this case if the reasons for plaintiff's termination are in dispute or there is evidence of disparate treatment then summary judgment must be denied. Reeves v. Sanderson Plumbing. 2000 WL 743663 (U.S. S. Ct. June 12, 2000).

5

## POINT II

**STANDARD OF REVIEW AND ANALYSIS OF THE SUBSTANTIVE CLAIMS (UNDER ADEA) McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2D 668 (1973) Is Controlling Herein and <u>Reeves v. Sanderson Plumbing</u>, 2000 WL 743663 (U.S. S. Ct. June 12, 2000).**

### Introduction

In addressing itself to the "critical issue" before it in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1871, 36 L.Ed.2d 668 (1973), Justice Powell, writing for the court stated:

The critical issue before us concerns the order and allocation of proof in private, non-class actions challenging employment discrimination. The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunity and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens. <u>Id</u>. at <u>411 U.S. 800</u>.

In the instant case, the plaintiff, is pursuing an individual non-class action suit challenging employment discrimination. Unlike <u>McDonnell Douglas</u>, which addressed itself to the refusal of that private corporate institution to rehire a black person, the plaintiff herein challenges the actions of the defendant party in terminating her from his position of employment. In <u>Texas Department of Community Affairs v. Burdines</u>, 450 U.S. 248, 252-253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting <u>McDonnell Douglas</u>), the court stated in relevant part:

First, the plaintiff has the burden of proving by a preponderance of the evidence a <u>prima facie</u> case of discrimination. Second, if the plaintiff succeeds in proving the <u>prima facie</u> case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

### 1. Plaintiff's Burden

In <u>McDonnell Douglas Corp. v. Green, supra</u>, at 411 U.S. 792, the Supreme Court enunciated a three-prong allocation of proof requirement in the context of a private, non-class

6

action challenging employment discrimination. It held:

> The complaint in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (v) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

One can show a prima facie case of discrimination in a variety of ways. The differences are in the fourth element. Plaintiff must show that (1) that he was a member of a protected class. 2) that the was qualified for the job; 3) that he was terminated despite his qualifications 4) he was treated less favorably than other similarly situated employees or that the reasons proffered by the employer or false Reeves v. Sanderson Plumbing. 2000 WL 743663 (U.S. S. Ct. June 12, 2000).

The burden then must shift to the employer to articulate some legitimate, non-discriminatory reason for the employer's rejection . . . but the inquiry must not end there. See McDonnell Douglas Corp. v. Green, supra, at 411 U.S. 903, 804-805. This three prong test has been applied or acknowledged in many cases since its initial pronouncement. See, among others: Furnco Construction Corp. v. Waters, 438 U.S. 567, 577, S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); Teamsters v. United States, 431 U.S. 324, 358, 97 S.Ct. 1843, 1886, 52 L.Ed.2d 396 (1977); Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248,, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Dister v. Continental Group Inc., 859 F.2d 1108 (2d Cir. 1988); Meiri v. Dacon, 759 F.2d 959 (2d Cir. 1983).

## 2.    Standards Regarding Retaliation

The opposition clause prohibits adverse action against an individual who has opposed employment practices made unlawful by Title VII or the Florida Civil Rights Act. The test is whether the employee had complained about conduct that if true would constitute a violation of Title VII or

7

the ADEA. Hartson v. Gainsville Son Publishing, 9 F3d 913 (11th Cir. 1993), Gordon v. City of Atmore, 996 F2d 1155 (11th Cir. 1993); Parker v. Baltimore & B.R.R. Co., 652 F.2d 1012 (D.C. Cir. 1981); Nonteiro v. Poole Silver Co., 615 F.2d (1st Cir. 1980). See also, Payne v. McLemore's Wholesale and Retail Stores, 654 F.2d 1130 (5th Cir. 1981). Clearly, complaining orally and in writing about discriminatory treatment falls squarely within the opposition clause.

To establish a case concerning discharge based upon retaliation, the plaintiff must by a preponderance of the evidence show each of the following four elements:

1.    That plaintiff complained about protected activity under Title VII;

2.    That the employer took adverse action;

3.    A causal link exists between the plaintiff's protected activity and the adverse action taken by the employer;

Hartson v. Gainsville Son Publishing, 9 F3d 913 (11th Cir. 1993), Gordon v. City of Atmore, 996 F2d 1155 (11th Cir. 1993); Cosgrove v. Sear Roebuck & CO., 9 F.3d 1033, 1039 (2nd Cir. 1993); Parker v. Baltimore & B.R.R. Co., 652 F.2d 1012 (D.C. Cir. 1981); Nonteiro v. Poole Silver Co., 615 F.2d (1st Cir. 1980). See also, Payne v. McLemore's Wholesale and Retail Stores, 654 F.2d 1130 (5th Cir. 1981). The burden then shifts to the employer to articulate a legitimate, specific, nondiscriminatory reason for the adverse action taken.

## 3.    Defendant's Burden

### Degree of Proof

While the plaintiff has the ultimate burden of persuasion to prove the alleged discrimination, see Texas Dept. of Cons. Affairs v. Burdine, 450 U.S. 2489, 253, 101 S.Ct. 1089, 1981), nevertheless the defendant party is required to satisfy an intermediate burden of rebutting a prima facie case of discrimination as established by the plaintiff pursuant to and under the guidelines mandated, described and otherwise set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792,

8

S.Ct. 1817, 63 L.Ed.2d 668 (1973). Furthermore, while at first blush it would appear that Burdine, supra, requires only that appellee articulate a legitimate reason to rebut a non-discriminatory justification in response to the prima facie case, such is not precisely the obligation of the rebutting party. In that regard, the Burdine Court requires something other than mere articulation of a non-race based justification. It requires that the "defendant's explanation (articulation) of its legitimate reasons must be clear and reasonably specific." Burdine, supra, at 450 U.S. 258, 67 L. Ed. at 2d 218 (emphasis added). Explaining the reason for requiring something more than a bland articulation of legitimate, non-discriminatory justification and requiring, instead, clear and specific justification.

    This obligation arises both from the necessity of rebutting the inference of discrimination arising from the prima facie case and from the requirement that the plaintiff be afforded "a full and fair opportunity" to demonstrate pretext... Plaintiff's position that something more than a bland articulation of justification/non-discriminatory reasons is necessary is supported by an analysis of pre-Burdine precedent and reflects the Supreme Court's inclusion of the language set forth in Burdine (that is, the use of the terms "clear" and "specific"). Meiri v. Dacon, 759 F.2d 959 (2d Cir. 1983).

## 4.    Plaintiff's Burden or Proving Pretext

    Once the defendant has articulated a legitimate criterion in a clear and specific manner then the burden shifts to the plaintiff to prove pretext. Burdine clearly stated that in addition to directly proving a discriminatory motive, a plaintiff may prevail upon showing that the employer's given legitimate reason is unworthy of credence, that is, that the reason supplied was not the true reason for the unfavorable employment decision. Burdine, supra, 450 U.S. 972; Dister v. Continental Group Inc., 859 F.2d 1108, 1113 (2d Cir. 1988). The reason is that employers generally act for a reason and thus those who can demonstrate no legitimate reason for acting more likely than not

9

acted for a discriminatory reason. Therefore, when the employer's non-discriminatory reason is shown to be unworthy of belief, and thus was not the real cause for the termination, the employer has in substance failed to articulate a valid explanation for discharging an employee and has placed its credibility into question. Dister v. Continental Group, supra.

In Harington v. Gainesville Sun Publishing Co., 9 F3d 913 (11th Cir. 1993) this Court reversed the District Court and held that a plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts which taken in the light most favorable to the non-moving party could allow a jury to find that the plaintiff has established pretext. In other words, the employer's proffered explanations is not credible or is unworthy of credence. The plaintiff can also show that a discriminatory reason likely motivated the employer in its employment decision. See also Batey v. Stone, 24 F3d 1330 (11th Cir. 1994) indicating that if a genuine factual dispute exists as to the preferred reason, summary judgement is inappropriate. In Howard v. BP Oil Co., 32 F3d 520 (11th Cir. 1994) held that plaintiff's burden on summary judgement is merely creating a factual issue as to the truthfulness of the defendant's proffered explanation. See also Cooper-Houston v. Southern Railway Co., 37 F3d 603 (11th Cir. 1994). The Supreme Court recently spoke on the shifting burdens. For summary judgment purposes one must show that the reasons articulated to terminate plaintiff are in dispute. Accordingly, plaintiff may do this by showing that the legitimate reasons are not the true reasons for her termination or there is a factual dispute as to disparate treatment in connection with her termination. Reeves v. Sanderson Plumbing. 2000 WL 743663 (U.S. S. Ct. June 12, 2000).

## POINT IV

### THERE ARE SUBSTANTIAL MATERIAL ISSUES OF
### FACT IN DISPUTE REGARDING RACE DISCRIMINATION AND RETALIATION

In reviewing the granting of summary judgment, the Court must view the evidence in a light most favorable to the plaintiff. Sweat v. Miller Brewing Company, 708 F2d 655 (11th Cir. 1983).

10

**In a glaring omission by the defendant there is no record evidence from the direct supervisor Roma about the disparate treatment plaintiff was subjected to which was specifically set forth in her affidavit.** Put simply, plaintiff's affidavit is not controverted with any record evidence. In fact, there is no admissible evidence to refute plaintiff's deposition and affidavit.

Plaintiff's affidavit sets forth with specificity the hostile work environment and disparate treatment and retaliation which lead to her termination. For example, direct evidence of the store manager's bias was that Plaintiff was the only employee that was subjected to biased stereotyping by Roma Rybitha. Plaintiff was called by Roma Rybitha a street person, thug, you people and drug addict and am not the right person to work there. (paragraph 6 of Plaintiff's affidavit) You people, and street person can be racial stereotyping especially for purposes of the summary judgment where the facts must be construed in a light most favorably to plaintiff. This is direct evidence of racial bias. Other direct evidence is the store manager (Roma) telling plaintiff to closely observe African-Americans when they were shopping at the store which again stereotypes African-Americans. (paragraph 13 of plaintiff's affidavit)

Besides the direct evidence of bias of the Caucasian-Polish store manager, there is an abundance of indirect evidence as well. For instance, plaintiff was the only employee of Marty's Shoes that was not allowed to go to the rest room without first notifying the manager. Having to ask permission to go to the restroom is humiliating especially when other employees (non-African-American) did not have to ask for permission to use the restroom. (paragraph 4 of Plaintiff's affidavit) Other employees were allowed to use the telephone but plaintiff was not allowed to answer the employer's telephone. (paragraph 5 of Plaintiff's affidavit)

Plaintiff was also humiliated when at the end of her shift, she was the only employee that had to display her shoes to Roma Rybitha to make sure that she was not stealing. This act is

11

particularly offensive to an African-American since it fits into the offensive stereotype of African-Americans being dishonest. (paragraph 7 of Plaintiff's affidavit)   Plaintiff  was the only employee that could not take a reasonable lunch-break.  In other words, her lunch breaks were closely monitored.  In this small store, she never observed Roma Rybitha monitor other employees' lunch break. ((paragraph 8 of Plaintiff's affidavit) Plaintiff  was the only employee in the store that could not go to the front cashier's for shoe assistance. (paragraph 9 of Plaintiff's affidavit)

Plaintiff was isolated from her coworkers.  They were advised not to talk to her. (paragraph 10 of Plaintiff's affidavit)   Plaintiff's breaks were limited to 10 minutes break time  when the non-African employees   had 15-30 minutes of break time. (paragraph 11 of Plaintiff's affidavit)

In addition, store privileges were not  same either.  For example, shoes that were damaged were discounted to the customer but plaintiff was not allowed to discount the shoes to her customers.  However, plaintiff personally observed other non-African employees who were allowed to  give significant discounts to their customers. (paragraph 12 of Plaintiff's affidavit)

During the last two months of plaintiff's employment, her hours began to be steadily reduced. Plaintiff complained to the District Manager, Stanley Dzioba who refused to acknowledge and investigate plaintiff's  complaints of racial discrimination regarding her store manager.  Plaintiff also  complained to Mr. Adams, V.P. in Marty's corporate offices in writing as well.  (paragraph 13 of plaintiff's affidavit; Exhibit "A" to the affidavit and Defendant's Exhibit "4") . Immediately after her complaints in late May, 1996, plaintiff was retaliated against by having her hours reduced even further and terminated within one month of her complaint.  In fact, during the last weeks of her employment, plaintiff was scheduled to work only one hour a week.  This was profoundly humiliating to plaintiff.  Thus, plaintiff was forced in order to keep her job to come to work for one hour, once a week. Plaintiff saw the schedule posted almost every week, and no other employee had ever been scheduled to work one hour a week.  In a striking coincidence, the  defendant stated

12

that the work schedules and time records for the relevant time period were not available. (See plaintiff's deposition transcript. and paragraph 14 of plaintiff's affidavit and Exhibit "B"- plaintiff's wage statements).

Despite the fact that there is a counseling procedure, plaintiff never received any performance counseling and conduct counseling except one when she was late. The reason being is that although there were disagreements and arguments pertaining to the disparate treatment set forth herein, plaintiff was never disrespectful nor as the defendant maintains any threats to her managers were made. Further, there is absolutely no evidence of any performance deficiencies Put simply, if plaintiff's conduct was inappropriate why was she not counseled, and if her performance was deficient why was it not documented.

In sum, the only record evidence before the Court is plaintiff's unrebutted affidavit and deposition regarding how she was discriminated against and that when she complained about the discrimination, she was retaliated against and terminated within one month.

Clearly under the standards set by **Reaves**, summary judgment must be denied since in the record the reasons for the termination are in dispute, there is direct evidence of discrimination and there are numerous examples of disparate treatment including the termination.

### CONCLUSION

Plaintiff respectfully submits that the summary judgment be denied in its entirety.

Dated: Fort Lauderdale, Florida
        November 30, 2000

                                    Respectfully submitted,

                                    STEWART LEE KARLIN, ESQ.
                                    Attorney for Plaintiff
                                    400 Southeast Eighth Street
                                    Fort Lauderdale, Florida 33316
                                    (954) 462-1201
                                    Fla. Bar No.: 961159

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished by U.S. Mail to:

Thomas H. Loffredo, Esq., Holland & Knight, LLP, 1 East Broward Blvd., Suite 1300, P.O. Box

14070 Fort Lauderdale, Florida 33302, on this 30th day of November, 2000.

STEWART LEE KARLIN, ESQ.
Florida Bar No.: 0961159
400 Southeast Eighth Street
Fort Lauderdale, Florida 33316
(954) 462-1201

14

E X H I B I T "1"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DENISE BROOKINS,

               Plaintiff,

v.

MARTY'S SHOES OF NEW JERSEY, INC.,

               Defendant.

**Case No.: 00-6002-CIV
UNGARO-BENAGES**

_____/

### PLAINTIFF'S AFFIDAVIT

BEFORE ME, the undersigned authority duly qualified to administer oaths and take acknowledgments, personally appeared, DENISE BROOKINS who being by me first duly sworn upon her oath, deposes and states that:

1.     I was employed as a part-time sales person at Marty's Shoes from approximately November, 1995 to June, 1996.  When I was initially employed, I worked approximately twenty hours a weeks.  It should be noted that I was the only African-American employed in the store and that approximately six employees, Gonzalez, Michael Torres, Chris Torres, Ching, Anna and Peter who were either Polish or Hispanic.

2.     My initial supervisor was Carmen  and I had no significant problems until a new supervisor Roma Rybitha (Caucasian-Polish) became store manager.

3.     Shortly thereafter, in approximately one or two months, I noticed a significant difference in the way I was treated as opposed to the other staff who were either Caucasian or Hispanic.

4.     For example, I was completely humiliated when I was the only employee of Marty's Shoes that was not allowed to go to the rest room without first notifying the manager. I repeatedly

observed Caucasian and Hispanic employees such as Gonzalez, Torres, Torres, Ching, Anna and Peter who did not have to ask for permission to use the restroom.

5.    I was the only employee that was not allowed to answer the employer's telephone.

6.    I was the only employee that was subjected to biased stereotyping by Roma Rybitha. I was called by Roma Rybitha a street person, thug, you people and drug addict and am not the right person to work there.

7.    At the end of my shift, I was the only employee that had to display my shoes to Roma Rybitha to make sure that I was not stealing. I observed other non-African sales representatives such as Gonzalez, Torres, Torres, Ching, Anna and Peter , leaving at the end of their shift, I never observed Roma Rybitha checking their shoes to see if they were stealing.

8.    I was the only employee that could not take a reasonable lunch-break. In other words, my lunch breaks were closely monitored. In this small store, I never observed Roma Rybitha monitor other employees' lunch break.

9.    I was the only employee in the store that could not go to the front cashier's for shoe assistance.

10.    Other employees such Gonzalez, Torres, Torres, Ching, Anna and Peter were told not to talk to me and thus I was isolated from my coworkers.

11.    My breaks were limited to 10 minutes break time when the non-African employees such as Gonzalez, Torres, Torres, Ching, Anna and Peter had 15-30 minutes of break time,

12.    In addition, store privileges were not same either. For example, shoes that were damaged were discounted to the customer but I was not allowed to discount the shoes to my customers. However, I personally observed other non-African employees who were allowed to give significant discounts to their customers such as Gonzalez, Torres, Torres, Ching, Anna and Peter.

13.    I was told by my store manager (Roma) to closely observe African-Americans when

they were shopping at the store.

14.    During the last two months of my employment, my hours began to be steadily reduced. I complained to the District Manager, Stanley Dzioba who refused to acknowledge my complaints of racial discrimination regarding my store manager. He refused to investigate my complaints and never interviewed me  In addition, I also complained to Mr. Adams, V.P. in Marty's corporate offices in writing as well. See Exhibit "A" which was sent to the district manager as well. Immediately after my complaints, I was retaliated against by having my hours reduced even further. In fact, during the last weeks of my employment, I was scheduled to work only one hour a week. This was profoundly humiliating to me that the District Manager and Store Manager would schedule me for only one hour a week.   Thus, I was forced in order to keep my job to come to work for one hour, once a week. I saw the schedule posted almost every week, and no other employee (I was the only African-American employee in the store and  numerous employees were hired by the store manager, Roma Rybitha, none were African-American) to my knowledge had ever been scheduled to work one hour a week. In a striking coincidence, the  defendant stated that the work schedules and time records for the relevant time period were not available.  (See plaintiff's deposition transcript.)  (See Exhibit "B"- plaintiff's wage statements)[1]

14.    Although there is policy of providing written counseling for performance and conduct that falls below standard, I never received a written counseling that my conduct or performance was somehow deficient except coming in late once. (Defendant Exhibit 17). The reason I was never warned is that performance and conduct were at or above standards.[2]

_____

[1] There were arguments and voices raised, however, it almost dealt with the racially hostile atmosphere and disparate treatment that I was subjected to on a daily basis.

[2]Although I testified regarding Sallys', I was in fact let go because new management came in and terminated the entire staff. Thus, I was truthful in my response when I stated that I was let go because new management came in. The allegations made by defendant regarding being barred from class and calling an instructor a bitch is false. If it did occur I would have been subjected to some form of discipline or even discharged from the program which I am still enrolled. Finally, in connection ADT, there was a complaint made by a coworker which was not

15.    Defendant now attempts to suggest that I was somehow violent or poses a risk of harm to my manager.  This is an outrageous fabrication.

16.    I believe my Marty's discriminated against me by the comments that were made and by subjecting me to disparate treatment.  Within weeks of complaining about discrimination, my hours were reduced to point where I was only allowed to work one hour a week and then terminated without an explanation as to the reason why.  If not for my race, color and retaliation, I would not have been terminated.


**FURTHER AFFIANT SAITH NAUGHT**

_____
**DENISE BROOKINS**


STATE OF FLORIDA          )
                          ) ss.
COUNTY OF BROWARD    )

On this 29th day of November, 2000 before me, the undersigned Notary Public of the State of Florida, personally appeared Denise Brookins who is personally known and being by me first duly sworn, deposes and says that she executed the foregoing Affidavit and that the facts are true and correct to the best of her knowledge and belief.



Stewart L Karlin
Commission CC838297
Expires May 18, 2003

_____
**NOTARY PUBLIC, STATE OF**

true but I was told that I was being separated from the payroll.



Stewart L Karlin
My Commission ⟨⟩⟨⟩38297
Expires ⟨⟩ ⟨⟩

**(Seal)**

**FLORIDA AT LARGE**

_____

**Printed Name of Notary**

**E X H I B I T " A "**

To District Managers of Marty's Shoes.

I'm writing this letter to inform you of several problems I'm having while employed in Marty's Shoes of Ft. Laud, Fla. I was hired by Store Manag Carmen of 12-5-95. And Roma Rykitha became manage i soon became involved her preferential treatment practice. And involved in that She Continued to accused of walking off my job, being seen in Mall while working, drinking on the job, She even told me that the owner Marty complained that i was seen to him. If i was why didn't he tell me or Fire me. None of her accusations took place. In addition to that She has called me innuendos like a Street person, a Thug, Vaga-bond, or maybe i'm on drugs And has deliberately cut my hours to not standing on her side when She accused 4 African - Americans of stealing shoes. Which lat turned out to be false. The Manager of Security Fra & Tony meni toli were outraged that she told the she seen the men take the shoes. The Timberla shoes he had on our store didn't carry that style. told me that i didn't stand up for the store and (1) shouldn't work here. I couldn't stand up for her bec I honestly didn't see him steal the shoes. I feel

DB 00035

DEFENDANT'S
EXHIBIT
4
KT 8.23.00

she is firing me out. She is never complained of my work performance. I would like to know why Stanley is cutting my hours intentionaly & he never gave me a reason why. She constanly complaines of my character. if i arrive early she makes me clock in late & lease early. Everything i told Stanly in the past about Rome is the truth. The last week Michall gave me 5 hrs to work. And she threatened him saying. If she gave me more hrs he would be fired. What's the harm done here. Why am i the only whose work hours are being decreased. I would like an explanatc from Stanley. I writig because she told that i would have to work (1) hour a week from Now on. because he (Michael) gave me 5 hours one day. If Stanley can bring someone from off the street to work then il know i should be able to work more then (1) hour a week. I ask for a reason why she says Stanley says so. These problems should be resolve between the store employees only. But when a person is practing Racism i feel the District manager shoul be aware of what she's doing. I like my job even though i don't work Full-time. It's still my job. And i don't derserve this Racist treatment. I never violated any Rules. I came there to work not to be accused of Anything. I hope you will believe me And

look i'm it or investigate but i'm saying
i'm not writing this letter because i'm angry
i'm writing because i never did anything to
deserve this treatment or harrassment. i feel
that i shouldn't quit to make her happy. Because
she honestly dosn't like me. Michael has never been
a problem with me. he tells us a job tasks & that's
it. if you made a mistake he'll correct you & tell
you not tell you you're a street person. Please use
you're methods of looking into these problems. i know
i can't do anything if Stanley fire me But i didn't deserve it.
  you're prompt attention is appreciated.
  please understand that
i can't apologize for something    Elaine Denise Brakins
i didnt do. i just want    921. N.W. 33 way
to work    Ft. Laud, Fla 33311
    954) 327-7390

**DB 00037**

**E X H I B I T " B "**

## Earnings Statement

**MARTY SHOES, INC.**

Period Ending: 03/02/96
Pay Date: 03/07/96

3
200   000747 098     X 50X   000022452   1

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
Federal:   1
State:     No State Income Tax

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7600 | 16.75 | 96.31 | |
| Holida | | | | |
| **Gross Pay** | | | **$96.31** | 14.38 / 1,128.47 |

| Deductions | | this period | year to date |
|---|---|---|---|
| **Statutory** | | | |
| Social Security Tax | | -5.98 | 69.97 |
| Medicare Tax | | -1.36 | 19.30 |
| Federal Income Tax | | | 25.80 |
| **Net Pay** | | **$88.84** | |

Your federal taxable wages this period are $96.31

DB 00021

◀ TEAR HERE

©1993 Automatic Data Processing, Inc.


DEFENDANT'S EXHIBIT
2

**MARTY SHOES, INC.**

| CO | FILE | DEPT. | CLOCK NUMBER |
| --- | --- | --- | --- |
| 20Q | 000747 | 098 | X 50X 000022741 1 |

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 1
State: No State Income Tax

**Earnings Statement**

Period Ending: 03/09/96
Pay Date: 03/14/96

**DENISE F BROOKINS**
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

| Earnings | rate | hours | this period | year to date |
| --- | --- | --- | --- | --- |
| Regular | 5.7500 | 16.00 | 92.00 | 14.38 |
| Holida | | | | 1,220.47 |
| **Gross Pay** | | | **$92.00** | |

| Deductions | | this period | year to date |
| --- | --- | --- | --- |
| Statutory | | | |
| Social Security Tax | | -5.70 | 75.67 |
| Medicare Tax | | -1.34 | 17.70 |
| Federal Income Tax | | | 25.80 |
| **Net Pay** | | **$84.96** | |

Your federal taxable wages this period are $92.00

DB 00017

◄ TEAR HERE

©1993 Automatic Data Processing, Inc

**Earnings Statement**

**MARTY SHOES, INC.**

Period Ending: 03/16/96
Pay Date: 03/21/96

DENISE F BROOKINS
921 N.W. 33 WAY
FT. KAYDERDALE FL 33311

CA The HFTL CLCK number
2QQ 000747 099 X 50X 000023028 1

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 1
State: No State Income Tax

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 16.25 | 93.44 | |
| Holida | | | | |
| **Gross Pay** | | | **$93.44** | |

| Deductions | | | |
|---|---|---|---|
| **Statutory** | | | |
| Social Security Tax | | -5.79 | 81.46 |
| Medicare Tax | | -1.35 | 19.05 |
| Federal Income Tax | | | 26.80 |
| **Net Pay** | | **$86.30** | 1,313.91 |

| | year to date |
|---|---|
| | 14.38 |

Your federal taxable wages this period are $93.44

**DB 00022**

◄ TEAR HERE

©1993 Automatic Data Processing, Inc.

MARTY SHOES, INC.

CO
2GQ    FILE    DEPT.    CLOCK    NUMBER
000747 098         X 50X   0000223317

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
Federal:    1
State:    No State Income Tax

**Earnings Statement**

Period Ending:    03/23/96
Pay Date:    03/28/96

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7600 | 14.75 | 84.81 | |
| Holida | | | | 14.38 |
| **Gross Pay** | | | **$84.81** | 1,398.72 |

| Deductions | Statutory | | | |
|---|---|---|---|---|
| | Social Security Tax | -5.26 | | 86.72 |
| | Medicare Tax | -1.23 | | 20.28 |
| | Federal Income Tax | | | 25.80 |
| | **Net Pay** | **$78.32** | | |

Your federal taxable wages this period are $84.81

DB 00023

EAP HERE

©1993 Automatic Data Processing, Inc.

ADP



State.  (no state tax)

**Earnings**

| | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 6.7500 | 9.50 | 64.63 | 14.38 |
| Holida | | | | 1,453.35 |

**Gross Pay** $64.63

**Deductions**

| Statutory | | |
|---|---|---|
| Social Security Tax | -3.39 | 90.11 |
| Medicare Tax | -0.79 | 21.07 |
| Federal Income Tax | | 25.80 |

**Net Pay** $50.45

Your federal taxable wages this period are $54.63

DB 00024

©1991 Automatic Data Processing, Inc.

CO      FILE      DEPT.      CLOCK      NUMBER
2QQ    000747 098         X  ( )   000022300G      1

MARTY SHOES, INC.

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 1
  State:   No State Income Tax

**Earnings**

| | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 4.75 | 27.31 | 14.38 |
| Holida | | | | 1,480.66 |
| **Gross Pay** | | | **$27.31** | |

**Deductions**

| Statutory | | | |
|---|---|---|---|
| Social Security Tax | -1.65 | | 7.30 |
| Medicare Tax | -0.40 | | 21.47 |
| Federal Income Tax | | | 25.80 |
| **Net Pay** | | | **$25.22** |

Your federal taxable wages this period are $27.31

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

**Earnings Statement**

Period Ending:    04/06/96
Pay Date:         04/11/96

ADP

DB 00032

TEAR HERE      ©1991 Automatic Data Processing, Inc.

Earnings Statement

| CO   | FILE   | DEPL. | CHECK NUMBER |
|------|--------|-------|--------------|
| 2QG  | 000747 | 098   | X 50X  0000224489   1 |

MARTY SHOES, INC.

Period Ending:   04/20/96
Pay Date:        04/25/96

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
Federal:   1
State:   No State Income Tax

| Earnings | rate   | hours | this period | year to date |
|----------|--------|-------|-------------|--------------|
| Regular  | 5.7500 | 6.00  | 34.50       |              |
| Holida   |        |       |             |              |
| **Gross Pay** |   |       | **$34.50**  | 1,551.10     |

| Deductions | this period | year to date |
|------------|-------------|--------------|
| **Statutory** | | |
| Social Security Tax | -2.14 | 96.17 |
| Medicare Tax | -0.50 | 22.49 |
| Federal Income Tax |  | 25.80 |
| **Net Pay** | **$31.86** | |

Your federal taxable wages this period are $34.50

DB 00020

◀ TEAR HERE    ©1991 Automatic Data Processing, Inc.



| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 3.00 | 17.25 | 14.38 |
| Holiday | | | | 1,602.85 |
| **Gross Pay** | | | **$17.25** | |

| Deductions | | this period | year to date |
|---|---|---|---|
| **Statutory** | | | |
| Social Security Tax | | -1.07 | 99.38 |
| Medicare Tax | | -0.25 | 23.24 |
| Federal Income Tax | | | 25.80 |
| **Net Pay** | | **$15.93** | |

Your federal taxable wages this period are $17.25

DB 00031

◀ TEAR HERE        ©1991 Automatic Data Processing, Inc.



State:   No State Income Tax

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 3.00 | 17.25 | 14.38 |
| Holida | | | | 1,620.10 |

**Gross Pay** $17.25

**Deductions**

| Statutory | | |
|---|---|---|
| Social Security Tax | -1.07 | 100.45 |
| Medicare Tax | -0.25 | 23.49 |
| Federal Income Tax | | 25.80 |

**Net Pay** $15.93

Your federal taxable wages this period are $17.25

DB 00030

◄ TEAR HERE   ©1991 Automatic Data Processing, Inc.

Earning Statement

| | | |
|---|---|---|
| Period Ending: | 05/18/96 |
| Pay Date: | 05/23/96 |

CO   FILE   DEPT.   CLOCK   NUMBER
2GG  000747 098     X      000025871   1

MARTY SHOES, INC.

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 1
  State:   No State Income Tax

DENISE F BROOKINS
921 N. W. 33 WAY
FT KAYDERDALE FL 33311

**Earnings**

| | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 3.00 | 17.25 | 14.38 |
| Holida | | | | 1,637.35 |
| **Gross Pay** | | | **$17.25** | |

**Deductions**

| Statutory | | |
|---|---|---|
| Social Security Tax | -1.07 | 101.52 |
| Medicare Tax | -0.25 | 23.74 |
| Federal Income Tax | | 25.80 |
| **Net Pay** | | **$16.93** |

Your federal taxable wages this period are $17.25

DB 00029

◄ TEAR HERE     ©1991 Automatic Data Processing, Inc.

State:    No State Income Tax

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 5.00 | | 14.38 |
| Holida | | | | 1,666.10 |
| **Gross Pay** | | | **$28.76** | |

**Deductions**

| Statutory | | |
|---|---|---|
| Social Security Tax | -1.78 | 103.30 |
| Medicare Tax | -0.42 | 24.16 |
| Federal Income Tax | | 25.80 |

| **Net Pay** | **$26.55** |
|---|---|

Your federal taxable wages this period are $28.75

**DB 00018**

◄ TEAR HERE      ©1991 Automatic Data Processing, Inc.

MARTY SHOES, INC.

```
CO    FILE    DEPT.  CLOCK  NUMBER
200   000747  099    X f.   000026296  1
```

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
   Federal: 1
   State:   No State Income Tax

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 1.00 | 5.76 | 14.38 |
| Holida | | | | 1,671.85 |
| **Gross Pay** | | | **$5.75** | |

| Deductions | | | |
|---|---|---|---|
| Statutory | | | |
| Social Security Tax | -0.35 | | 103.65 |
| Medicare Tax | -0.08 | | 24.24 |
| Federal Income Tax | | | 25.80 |
| **Net Pay** | | **$5.73** | |

Your federal taxable wages this period are $5.75

**Earning Statement**

Period Ending:  06/01/96
Pay Date:       06/06/96

**DENISE F BROOKINS**
**921 N.W. 33 WAY**
**FT KAYDERDALE FL 33311**

DB 00028

◄ TEAR HERE    ©1991 Automatic Data Processing, Inc.

MARTY SHOES, INC.

| CO | FILE | DEPT. | CLOCK | NUMBER |
|---|---|---|---|---|
| 200 | 000747 | 098 | X 5 | :0000226615  1 |

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
  Federal: 1
  State: No State Income Tax

**Earnings**

| | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 1.00 | 5.75 | 14.38 |
| Holiday | | | | 1,677.60 |
| **Gross Pay** | | | **$5.75** | |

**Deductions**

| Statutory | | |
|---|---|---|
| Social Security Tax | -0.36 | 104.01 |
| Medicare Tax | -0.08 | 24.32 |
| Federal Income Tax | | 24.80 |
| **Net Pay** | **$5.31** | |

Your federal taxable wages this period are $5.75

**Earnings Statement**

Period Ending: 06/08/96
Pay Date: 06/13/96

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

DB 00027

◄ TEAR HERE    ©1991 Automatic Data Processing, Inc.

MARTY SHOES, INC.

CO       FILE    DEPT.  CLOCK   NUMBER
200    000747 008      X C        0000226947   1

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
    Federal:   1
    State:     No State Income Tax

**Earnin__ Statement**

Period Ending:      06/15/96
Pay Date:           06/20/96

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 5.7500 | 2.00 | 11.50 | 14.38 |
| Holida |  |  |  | 1,689.10 |
| **Gross Pay** |  |  | **$11.50** |  |

| Deductions | | |
|---|---|---|
| **Statutory** | | |
| Social Security Tax | -0.71 | 104.72 |
| Medicare Tax | -0.17 | 24.49 |
| Federal Income Tax |  | 25.60 |
| **Net Pay** |  | **$10.62** |

Your federal taxable wages this period are $11.50

**DB 00026**

◀ TEAR HERE      C1991 Automatic Data Processing, Inc.

MARTY SHOES, INC.

| CO | FILE | DEPT | CLK | CK NUMBER |
|----|------|------|-----|-----------|
| 2QQ | 000747 | 098 | X | 0000227280 | 1

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
   Federal: 1
   State: No State Income Tax

**Earnings**

| | rate | hours | this period | year to date |
|---|------|-------|-------------|--------------|
| Regular | 5.7500 | 3.00 | 17.25 | 14.38 |
| Holida | | | | |
| **Gross Pay** | | | **$17.25** | **1,706.35** |

**Deductions**

| Statutory | | |
|-----------|---|---|
| Social Security Tax | -1.07 | 105.79 |
| Medicare Tax | -0.25 | 24.74 |
| Federal Income Tax | | 25.80 |
| **Net Pay** | | **$15.93** |

Your federal taxable wages this period are $17.25

**DENISE F BROOKINS**
**921 N.W. 33 WAY**
**FT KAYDERDALE FL 33311**

Earnin 's Statement

Period Ending:    06/22/96
Pay Date:    06/27/96

ADP

DB 00025

◄ TEAR HERE    ©1991 Automatic Data Processing, Inc.

**ADP**

# Earnings Statement

MARTY SHOES, INC.

| CO | FILE | DEPT. | CLOCK NUMBER |
|----|------|-------|--------------|
| 2GQ | 000747 098 | X 50X | 000027815 1 |

Social Security Number: 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
Taxable Marital Status: Single
Exemptions/Allowances:
Federal: 1
State: No State Income Tax

| Earnings | rate | hours | this period | year to date |
|----------|------|-------|-------------|--------------|
| Regular | 5.7500 | 5.00 | 28.75 | |
| Holida | | | | |
| **Gross Pay** | | | **$28.75** | 1,735.10 |

| Deductions | | | |
|------------|------|------|------|
| **Statutory** | | | |
| Social Security Tax | -1.79 | | 107.58 |
| Medicare Tax | -0.42 | | 25.16 |
| Federal Income Tax | | | 25.80 |
| **Net Pay** | | | **$26.54** |

Your federal taxable wages this period are $28.75

Period Ending: 06/29/96
Pay Date: 07/03/96

DENISE F BROOKINS
921 N.W. 33 WAY
FT KAYDERDALE FL 33311

Important Notes
HAPPY INDEPENDENCE DAY!!!

DB 00019

◄ TEAR HERE    ©1991 Automatic Data Processing, Inc.