UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6002-CIV-(UNGARO-BENAGES/Brown)

DENISE BROOKINS,

           Plaintiff,

vs.

MARTY SHOES, INC.,

           Defendant.
_____/

## DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

Defendant Marty Shoes, Inc. ("Marty Shoes"), through undersigned counsel, submits its Reply Memorandum in support of summary judgment in its favor on Plaintiff's claims.

### I. INTRODUCTION.

Our federal courts do not sit to referee workplace personality conflicts. Nor is it the Court's obligation to "wind[ ] [its] dreary way through [ ] bitter personal animosities" between an employee and her supervisor to determine which of them may be more blameworthy.[1]

But that is precisely what Plaintiff asks the Court to do -- and she bends both the record facts and the applicable law well out of shape in order to persuade the Court it should. When the actual record is reviewed, it becomes clear that Marty Shoes is entitled to summary judgment.

### II. LEGAL ARGUMENT AND MEMORANDUM OF LAW.

Summary judgment is appropriate on Plaintiff's race discrimination and retaliation claims under 42 U.S.C. § 1981. Plaintiff cannot show that anything other than her fierce and continuing personality conflict with her supervisor prompted the alleged adverse employment actions she relies on to support her claims.[2]

---

[1] The quotation is from *McCollum v. Bolger*, 794 F.2d 602, 612 (11th Cir. 1986), *cert. denied*, 479 U.S. 1034 (1987).

[2] Plaintiff's failure to rebut Marty Shoes' explanation for her treatment dooms both her claims. *See Sanguinetti v. United Parcel Service*, 114 F. Supp. 2d 1313, 1316 (S.D. Fla. 2000)("to prevail [over evidence of an employer's legitimate, non-discriminatory reason for its actions], [a] [p]laintiff must prove that the reason offered is a pretext for discrimination;" *Mandeville v. City of Coral Gables*, 50 F. Supp. 2d 1320, 1333 (S.D. Fla. 1999)(entering summary judgment upon plaintiff's failure to offer concrete evidence that employer's proffered reason is pretextual).

Plaintiff first tells the Court that discrimination cases involving an employer's motivations are "generally unsuitable for disposition at the summary judgment stage." (Response, p. 5).[3] But the Eleventh Circuit disagrees: "the summary judgment rule applies in job discrimination cases just as in other cases [and] [n]o thumb is to be placed on either side of the scale." *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000).

The function of the summary judgment rule in job discrimination cases is to "separate the wheat from the chaff" in a plaintiff's evidence, to determine whether viable claims remain. *See Hanson v. Hancock County Mem. Hosp.*, 938 F. Supp. 1419, 1424 (N.D. Iowa 1996). In this case, there is only chaff, and Plaintiff has no viable claims.

### A. Plaintiff's undisputed personality conflict with her supervisor is a legitimate, non-discriminatory and non-retaliatory reason for her treatment.

Plaintiff does not dispute that she had a personality conflict with her supervisor – Ms. Roma Rybitwa – a conclusion Plaintiff's own deposition testimony makes inescapable.[4]

In the three months before Plaintiff's employment ended, Plaintiff testified that she had ***more than one argument a day with Ms. Rybitwa*** – her direct supervisor and the Store Manager -- and lost her temper with Ms. Rybitwa "numerous" times. (Plaintiff's Depo., 182/4-6; 183/1-5). Such personality clashes are a legitimate, non-discriminatory reason for adverse employment action and do not amount to unlawful discrimination.[5]

---

[3] Plaintiff's Memorandum in Opposition to Summary Judgment (DE 39) is cited herein as the "Response" and Defendant's Motion and Memorandum of Law for Summary Judgment (DE 21) is cited herein as the "Motion."

[4] For this same reason, Plaintiff's *prima facie* race discrimination claim fails and the Court need not even reach Marty Shoes' legitimate, non-discriminatory reason for her treatment. Marty Shoes argued that Plaintiff's persistent conflict with Ms. Rybitwa rendered Plaintiff unqualified to continue in her job. (*See* Motion, pp. 16-17). Plaintiff's sole response is the conclusory claim, with no record evidence to support it, that "[her] performance and conduct were at or above standards." (Response, p. 3). But even if Plaintiff is deemed to have satisfied the *prima facie* elements of a race discrimination claim, Marty Shoes remains entitled to summary judgment. (*See* Motion, pp. 10-18 and this Reply Memorandum).

[5] *Nieves v. Metropolitan Dade County*, 598 F.Supp. 955, 963 (S.D. Fla. 1984); *see also Mira v. Monroe County School Board*, 687 F. Supp. 1538, 1549 (S.D. Fla. 1988)(collecting cases); *Motzny v. Hilander Food Stores*, 1994 WL 148716, *3 (N.D. Ill. 1994)("personality conflict between supervisor and employee is, by itself, a legitimate, non-discriminatory reason for discharge")(at Tab 1), *aff'd*, 47 F.3d 1173 (7th Cir. 1995); *Selsor v. Callagan & Company*, 609 F. Supp. 1003, 1008 (N.D. Ill. 1985)("personality conflict with a supervisor may be a legitimate reason for discharge in age discrimination case, if the conflict is not at all related to plaintiff's age."). Here, there is no showing that the personality conflict between Plaintiff and Ms. Rybitwa is related in any way to Plaintiff's race. Indeed, such issues have plagued Plaintiff beyond her employment at Marty Shoes. *See* pp. 9-10 below.

***<u>A plaintiff who is subjected to adverse employment action because she cannot get along with her supervisors or coworkers cannot survive summary judgment where she makes no showing of a factual question on the issue of pretext.</u>***[6]

In *McCollum v. Bolger*, the Eleventh Circuit reviewed a case in which the record supported a finding that an employee suing for sex discrimination was treated more harshly by her supervisor than similarly-situated employees. 794 F.2d at 609. Like Plaintiff here, McCollum "had a bad relationship with her supervisor [ ] and disagreed as to how her job should be performed." *Id.* at 609-610. The *McCollum* Court found this bad relationship to be a legitimate, non-discriminatory reason for suspending the plaintiff, noting that she could not "turn a personal feud into a sex discrimination case by accusation [where] [t]here was no proof offered to show how [McCollum's supervisor] was prejudiced against [her]. *Id.* at 610.[7] Plaintiff here faces the same hurdle, and she has not overcome it.

As the *McCollum* court noted, "[p]roof of a prima facie case [ ] is not proof of discrimination." *Id.* at 609. It merely "raises an inference of discrimination, which the defendant must rebut with evidence of a legitimate, non-discriminatory reason for [its] actions.'" *Id.* Here, Marty Shoes easily meets this burden by pointing to ***<u>Plaintiff's own deposition testimony</u>*** that she had more than one argument a day with Ms. Rybitwa and lost her temper "numerous" times with Ms. Rybitwa. (Plaintiff's Depo., 182/4-6; 183/1-5).

---

[6] *See, e.g., Pace v. Paris Maintenance Company*, 107 F. Supp. 2d 251, 264 (S.D.N.Y. 2000)(granting summary judgment in ADA case and noting that constant personality conflict between plaintiff and supervisor is legitimate, non-retaliatory reason for adverse action); *Thomas v. Runyon*, 108 F.3d 957, 959-960 (8th Cir. 1997)(affirming summary judgment where employee failed to show that avoidance of disruptive personality conflict was pretext for discrimination in transferring employee); *Motzny v. Hilander Food Stores*, 1994 WL 148716 (N.D. Ill. 1994)(granting summary judgment)(at Tab 1), *aff'd*, 47 F.3d 1173 (7th Cir. 1995); *Selsor v. Callaghan & Company*, 609 F. Supp. 1003, 1008 (N.D Ill. 1985)(granting summary judgment where discharged employee failed to show employee's "developing personality conflict" with supervisor was pretext for age discrimination).

[7] *See also Succar v. Dade County School Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000)("[p]ersonal animosity is not the equivalent of [ ] discrimination" and a plaintiff "cannot turn a personal feud into a [ ] discrimination case."); *Neratko v. Frank*, 31 F. Supp. 2d 270, 285 (W.D.N.Y. 1998)(employer's decision to deny an employment benefit to an employee does not violate Title VII when that decision is motivated by personal animosity.") Section 1981 does not prohibit a supervisor from treating an employee in a harsh or unfair manner – it only prohibits the supervisor from doing so because of the employee's race. There is no evidence to conclude that is what occurred here.

3

Plaintiff admits she had "disagreements and arguments" with Ms. Rybitwa, but says those conflicts pertained to racially "disparate treatment." (Response, p. 13). But Plaintiff's own deposition testimony directly conflicts with this conclusion.[8]

For the first two months Ms. Rybitwa was Plaintiff's supervisor, there were no conflicts between them. (*See* Plaintiff's Depo., 58/15-59/1). Indeed, Ms. Rybitwa accommodated Plaintiff's school schedule by modifying Plaintiff's work schedule. (Plaintiff's Depo., 58/15-62/16). It was only after the clashes began between Plaintiff and Ms. Rybitwa that Plaintiff's scheduled work hours began to steadily decrease – and it is unrebutted that Ms. Rybitwa's reason for decreasing Plaintiff's hours was Plaintiff's poor working relationship with Ms. Rybitwa.[9] And it is only after Plaintiff's daily arguments with Ms. Rybitwa began that Plaintiff claims to have experienced any disparate treatment. (Plaintiff's Depo., 58/15-59/1).

Thus, Plaintiff's personality conflict with Ms. Rybitwa constitutes a legitimate, non-discriminatory reason for the decline in Plaintiff's work hours and her eventual discharge.

**B.    Plaintiff has failed to rebut Marty Shoes' legitimate, non-discriminatory and non-retaliatory reason for her treatment.**

Because Marty Shoes has proffered a legitimate, non-discriminatory and non-retaliatory reason for the adverse actions Plaintiff alleged, to survive summary judgment, Plaintiff must present "concrete evidence in the form of specific facts which show that [Marty's Shoes']

---

[8] *See* Plaintiff's Depo., 182/4-25 (Q: So you would have more than one argument a day with Roma? A: Correct. Q: What would you argue about? A: It varied. She accused me of drinking on the job. She accused me of walking off. She accused me of giving shoes to Burlington employees. She accused me of a dozen different things. Q: *And that's what the arguments were about?* A: *No,* they were arguments about she had complaints about my wardrobe. She had complaints about my school schedule. She had complaints about the way I wore my hair. She had complaints about the way I answered the phone. She had complaints about my skin color. Q: How do you know she had complaints about your skin color? Did Roma ever say anything to you about your skin color? A: No.) (emphasis added). Clearly, Plaintiff has attempted to transform her personality conflict with Ms. Rybitwa into arguments about race discrimination, with no factual basis do to so.

[9] *See* Defendant's Statement of Facts in Support of Motion for Summary Judgment (DE 22), p. 2, ¶ 11. Plaintiff offers only a conclusory denial in response to this record evidence. (*See* Plaintiff's Verified Response to Defendant's Statement (DE 38), p. 2, ¶ 11). And the facts stated in Plaintiff's conclusory denial themselves conflict with the record evidence. More specifically, Plaintiff says her hours "were dramatically reduced as a result of [ ] complaints of discrimination" she allegedly made. *Id.* But the record evidence shows the decline in Plaintiff's work hours began in March of 1996 and continued into April and May of 1996, as her conflicts with Ms. Rybitwa intensified and *before* Plaintiff's alleged complaints in "late May, 1996." (Response, p. 12). An undisputed record of the decline in Plaintiff's work hours is contained in footnote 6 on page 3 of the Motion.

proffered reason is a mere pretext." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). "Mere conclusory allegations and assertions will not suffice." *Id.*

But that is all Plaintiff offers. Plaintiff says she "believe[s]" Marty Shoes "discriminated against [her] by [ ] comments that were made" by Ms. Rybitwa and by "subjecting [her] to disparate treatment." (Plaintiff's Affidavit (DE 40), ¶ 16). But she provides no evidence to show any connection between her treatment and her race.

### 1. Plaintiff's status as the store's only black employee is not evidence of discrimination.

Plaintiff tells the Court that "[i]t should be noted that she was the only African-American employed in the store and that a number of employees were hired by [her supervisor] but none of them were African-American." (*See* Response, p. 1; Plaintiff's Affidavit, ¶ 1). But there is neither factual nor legal significance to this claim; Plaintiff points to ***no evidence*** that her supervisor interviewed or refused to hire any African-American applicant and ***no evidence*** that any of the "employees [ ] hired by [her supervisor]" were hired instead of any African-American applicant. Plaintiff's assertion is therefore rendered "virtually meaningless."[10]

### 2. Unrebutted record evidence supports Ms. Rybitwa's state of mind.

Plaintiff tells the Court that the absence of record evidence from Ms. Rybitwa is a "glaring omission." (Response, p. 11). But Plaintiff is wrong. There is, indeed, ***unrebutted*** record evidence of Ms. Rybitwa's state of mind toward Plaintiff. The sworn Declaration of Stanley Dzioba demonstrates that Ms. Rybitwa repeatedly expressed concerns about her working relationship with Plaintiff and described continuing conflicts and arguments with Plaintiff, Plaintiff's refusal to adhere to work rules and Plaintiff's use of workplace profanity, as well as her own personal fear of Plaintiff – ***all of which is unrebutted***.[11]

---

[10] *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997)(where a plaintiff provides "no other information [ ] to make [ ] otherwise anecdotal information significant" she provides – at best – "[s]tatistics without an analytic foundation" which are "virtually meaningless."); *see also Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000)(statistical data regarding hiring pattern without context is not direct evidence of discrimination). There is ***no evidence*** that Marty Shoes discriminates in any manner, at any level, because of race; indeed, one of the company's six District Managers is black. (Dzioba Declaration (DE 23), ¶ 2).

[11] (Dzioba Declaration (DE 23), ¶ 6). Plaintiff did not depose Mr. Dzioba (who still works for Marty Shoes) or Ms. Rybitwa (who does not) in this case. The only deposition taken in this case was Plaintiff's – by Marty Shoes. Mr.

5

### 3. There is no direct evidence of discrimination in this case.

Plaintiff again misstates the law when she tells the Court that there is "direct evidence" of "biased stereotyping" in this case.

### a. *The alleged derogatory comments are not evidence of race discrimination and are explained by Plaintiff's poor relationship with Ms. Rybitwa.*

In this Circuit, "direct evidence" of discrimination is evidence that, "if believed, proves the existence of a fact in issue without inference or presumption." *Schoenfeld v. Babbit*, 168 F.3d 1257, 1266 (11th Cir. 1999)(citations and internal quotations omitted). Direct evidence is composed of "only [ ] the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Id.* An alleged statement which merely suggests a discriminatory motive is not direct evidence. *Id.*

Plaintiff accuses only two people of discriminating or retaliating against her: Roma Rybitwa and Stanley Dzioba. (Plaintiff's Depo., 71/2-6). It is undisputed that Mr. Dzioba never said anything discriminatory toward Plaintiff and it is undisputed that Ms. Rybitwa never said anything to Plaintiff about her skin color. (Plaintiff's Depo., 117/6-9; 182/22-25).

Nevertheless, Plaintiff tells the Court that she has "direct evidence" because she was "called [ ] a street person, thug, you people and drug addict and am not the right person to work here [sic]." (Response, p. 11). Plaintiff thinks the term "street person" is derogatory based on her race, although she does not know what it means. (Plaintiff's Depo., 111/12-25).[12] According to Plaintiff's own testimony, Ms. Rybitwa called Plaintiff a "street person" during an argument which began between Plaintiff and Ms. Rybitwa after Ms. Rybitwa rearranged a rack of shoes Plaintiff had worked on. (Plaintiff's Depo., 113/4-21).

Plaintiff provides no context to support the conclusion that the phrase "you people" is discriminatory. Plaintiff did not ask Ms. Rybitwa if by the phrase "you people" she meant black people and Ms. Rybitwa did not say she meant black people by that phrase. (Plaintiff's Depo.,

---

Dzioba's Declaration as to what Ms. Rybitwa told him reflects her state of mind about her conflicts with Plaintiff. *See* Fed.R.Evid. 803(3).

[12] Plaintiff's (obviously incorrect) opinion is that the term "street person" is racially derogatory because "black people primarily, the majority, walk the streets, sleep on the streets." (Plaintiff's Depo., 112/3-11). Here, it is clear that any discriminatory animus attached to the term "street person" has been placed there by Plaintiff alone.

6

115/25-116/6). Plaintiff's reasoning as to why the phrase is discriminatory is both speculative as a factual matter (*see* Motion, p. 12 fn. 23) and meaningless as a legal matter.[13] Each of the other alleged derogatory remarks occurred during the many arguments between Plaintiff and Ms. Rybitwa. (*See* Plaintiff's Depo., 114/12-115/24; 179/4-6). Under these circumstances, the alleged derogatory remarks cannot possibly be characterized as "direct evidence."

        **b.**    *Plaintiff recklessly misstates the factual record regarding being told to "closely observe African-Americans."*

In a **_clear misstatement of the factual record_**, Plaintiff tells the Court that "[o]ther direct evidence" of race discrimination is "the store manager (Roma) telling plaintiff to closely observe African-Americans when they were shopping at the store." (Response, p. 11).

Plaintiff was **_never_** told to "closely observe African-Americans" and **_her own deposition testimony_** proves it. On **_one_** occasion, Ms. Rybitwa asked Plaintiff to watch four **_specific_** young men who entered the store together dressed – according to **_Plaintiff's_** testimony and **_Plaintiff's_** opinion – like gang members. (Plaintiff's Depo., 79/15-17; 178/14-179/3). One of the men was seen wearing Timberland shoes – a brand sold by the store. (Plaintiff's Depo., 78/1-16). According to Plaintiff, Ms. Rybitwa believed the man had stolen the shoes from the store. (Plaintiff's Depo., 78/1-16). After the four young men – who were black – left the store, Ms. Rybitwa called mall security. (Plaintiff's Depo., 78/1-20). Security and the Sunrise police walked the young men back to the store and it was determined that the shoes had not been stolen. (Plaintiff's Depo., 78/1-16). Ms. Rybitwa **_did not say_** that she thought the young man took the shoes because he was black. (Plaintiff's Depo., 78/17-20). Further, **_Plaintiff's own testimony_** about what Ms. Rybitwa said about the young men makes it clear that no inference of racial animus can be drawn from it.[14]

---

[13] *See Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297 (S.D.N.Y. 2000)(managers use of the phrases "street person" and "you people" could not be deemed inherently racially offensive without greater specificity as to the context of their usage)(hostile environment claim).

[14] Plaintiff's Depo., 78/24-79/16 (Q: Did [Roma] say anything at the time which would make you think that [she suspected the men of stealing the shoes because they were African-American]? A: She stated to me to watch the gentlemen, um, they look suspicious or whatever along those lines.). But Plaintiff herself thought the men were dressed like gang members, certainly a reasonable and non-discriminatory basis for Ms. Rybitwa to characterize them as "look[ing] suspicious." (Plaintiff's Depo., 178/20-179/3).

*Both Plaintiff's Response and her Affidavit seek to mislead the Court into concluding that Ms. Rybitwa told Plaintiff to "closely observe African-Americans" – that is, as a general instruction*. But there was *only* the single occasion described herein, as Plaintiff's deposition makes clear:

> Q: Was there more than one occasion on which Roma told you to watch black customers in the store?
> A: No.
> Q: There was only one occasion?
> A: One occasion.
> Q: And she was talking about those four gentlemen specifically?
> A: Yes.

(Plaintiff's Depo., 95/16-25).

Thus, Plaintiff's contention that she was told to "closely observe African-Americans when they were shopping at the store" is a clear misstatement of the factual record in an improper attempt to manufacture an inference of racial discrimination where none exists.[15]

### c.   *The alleged disparate treatment is not "direct evidence."*

Next, Plaintiff sets forth a series of what she incorrectly terms "indirect evidence" of bias – a comparison of her own alleged treatment with that of other employees. But Plaintiff's "evidence" is conclusory, speculative, and cannot support any inference of pretext.[16]

But Plaintiff is not competent to testify regarding the way in which other employees were treated.[17] Further, even if Plaintiff is deemed to have the requisite personal knowledge, an

---

[15] Plaintiff repeats the allegation in paragraph 13 of her Affidavit. When viewed in context to her deposition testimony, it is clear Plaintiff has sworn to a bold misstatement of fact in direct conflict with her prior testimony. As such, this assertion is a sham and should be stricken from her Affidavit. *Van T. Junkins and Associates, Inc., v. U.S. Industries, Inc.*, 736 F.2d 656 (11th Cir. 1984).

[16] Plaintiff also inserts an eleventh-hour claim that she was subjected to a "hostile work environment." Plaintiff never pleaded this theory in her Amended Complaint (DE 8) and she cannot raise it now. *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 664 (7th Cir. 1998)(noting that it is improper for a plaintiff to amend a complaint through argument at the summary judgment stage).

[17] Plaintiff's only "evidence" supporting a comparison of her treatment by Ms. Rybitwa to that of other employees is her own Affidavit. However, it is *undisputed* that during the time period Plaintiff claims she was subjected to disparate treatment as compared to other employees, she worked an average of 14 hours a week in March 1996, 8 hours a week in April 1996, 3.5 hours a week in May 1996, and 2.4 hours a week in June 1996. (Motion, p. 3, fn. 6). Clearly, Plaintiff was in no position to have personal knowledge as to how Ms. Rybitwa treated employees for the many remaining work hours in those months. *U.S. v Lyon*, 567 F.2d 777, 783-784 (8th Cir. 1977)(Rule 602

examination of her deposition testimony indicates that she cannot base a claim on the allegations she offers.[18] Nor can Plaintiff base any claim on the assertion that "her coworkers [ ] were advised not to talk to her." (Response, p. 12; Plaintiff's Affidavit, ¶ 10).[19]

Finally, Plaintiff has made no attempt to show – or even to argue -- that Marty Shoes legitimate, non-discriminatory and non-retaliatory reason for the alleged "disparate treatment" – Plaintiff's terrible working relationship with Ms. Rybitwa -- was a pretext. Instead, Plaintiff would have the Court infer that the conflict between herself and Ms. Rybitwa were caused by a racially discriminatory or retaliatory animus held by Ms. Rybitwa, rather than by Plaintiff's own conduct.

But that inference is unreasonable – particularly in light of the evidence that Plaintiff's personal history, including her employment with other employers, has been plagued with such conflict arising from her own behavior:

- the year she came to work for Marty Shoes, Plaintiff was barred from a course at Broward Community College for "willful disobedience or defiance toward college personnel," "disorderly [ ] conduct," and profanity, after Plaintiff called her instructor a "bitch." (DE 24, Exhibit 10).[20]

- less than six months after her employment ended with Marty Shoes, Plaintiff was discharged by another employer, the Sawgrass Mills Mall, the day after a "verbal altercation" with her supervisor. (DE 35, pp. SM 0001-SM0002).

---

"[e]xcludes testimony concerning matter the witness did not observe or had no opportunity to observe"), *cert. denied*, 435 U.S. 918 (1978).

[18] Plaintiff's assertions regarding the alleged examples of "disparate treatment" are fully addressed in pages 13 through 15 of the Motion and as such, need not be duplicated herein.

[19] Such double-hearsay "cannot be used to defeat summary judgment." *Molenda v. Hoechst Celanese Corp.*, 60 F.Supp.2d 1294, 1303 (S.D. Fla. 1999), *aff'd*, 212 F.3d 600 (11th Cir. 2000).

[20] Notwithstanding the documents at Exhibit 10, Plaintiff says in her sworn Affidavit that the allegation that she was "barred from class and [sic] calling the instructor a bitch is false." (Plaintiff's Affidavit, at the second of two paragraphs numbered 14, n. 2). In her sworn deposition, however, Plaintiff testified that she could not recall if she was excluded from class at BCC. (Plaintiff's Depo., 211/25-212/2). When Plaintiff was asked "[w]ere you ever prevented from attending a class at BCC because of accusations against you for disruptive behavior?" she answered "I can't recall that." (Plaintiff's Depo., 211/13-16). Thus, Plaintiff now denies, under oath, an incident she could not recall when questioned about it in her deposition – thereby continuing a pattern of false statements she has made in relation to her various jobs and this lawsuit. (*See* Motion, p. 5, fn.10; p. 6, fn.12; p. 7, fn.13). Under these circumstances, the Court is not bound to credit Plaintiff's Affidavit as it concerns BCC. *See Selsor v. Callaghan & Company*, 609 F.Supp. 1003, 1010 (N.D. Ill. 1985).

- in June of this year, Plaintiff was fired from her job with ADT Automotive after being accused of harassing a coworker and saying inappropriate things to him. Prior to being fired, Plaintiff had been repeatedly disciplined for insubordination and confrontation with a supervisor. (DE 24, Exhibit 7).[21]

Plaintiff's remarkably consistent record of conflict elsewhere clearly renders unreasonable the inference that Plaintiff's problems getting along with Ms. Rybitwa at Marty Shoes were caused by a racially discriminatory or retaliatory animus of Ms. Rybitwa or Mr. Dzioba.[22]

### III.  CONCLUSION.

Plaintiff's continued conflict with her store manager caused every adverse action she relies upon to support her discrimination and retaliation claims, and Plaintiff makes no showing to the contrary. Summary judgment should be entered in favor of Marty Shoes on the claims in Plaintiff's Amended Complaint.

Respectfully submitted,

HOLLAND & KNIGHT LLP
Attorneys for Defendant
One East Broward Boulevard, Suite 1300
Post Office Box 14070 (33302-4070)
Fort Lauderdale, Florida 33301
(954) 525-1000
(954) 463-2030 – fax
email:   egabriel@hklaw.com

By: _____
Thomas H. Loffredo, for the Firm.
Florida Bar No. 870323
Eric K. Gabrielle, for the Firm.
Florida Bar No. 160725

---

[21] Plaintiff calls charges against her at ADT false, a dispute immaterial to the Motion; Plaintiff's other employment history is not offered as undisputed fact in support of summary judgment, but simply to illustrate the unreasonableness of the inference Plaintiff seeks -- that her problems at Marty Shoes can be attributed to racial or retaliatory motivations.

[22] "Although the non-movant is entitled on a motion for summary judgment to have all reasonable inferences drawn in its favor [ ] the court is not required to draw unreasonable inferences from the evidence." *St. Louis Joint Venture v. P&L Enterprises, Inc.*, 116 F.3d 262, 265 n. 2 (7th Cir. 1997)(citations omitted).

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by first class United States mail to Stewart L. Karlin, Esq., Attorney for Plaintiff, 400 S.E. 8th Street, Fort Lauderdale, Florida 33316, this _11_ day of December, 2000.

> HOLLAND & KNIGHT LLP
> Attorneys for Defendant
> One East Broward Boulevard, Suite 1300
> Post Office Box 14070
> Fort Lauderdale, Florida 33302-4070
> (954) 525-1000
> (954) 463-2030 - fax
>
> By: _____
> Thomas H. Loffredo, for the Firm.
> Florida Bar No. 870323
> Eric K. Gabrielle, for the Firm.
> Florida Bar No. 160725

FTL1 #520051 v1

11

1994 WL 148716 Page 11
(Cite as: 1994 WL 148716 (N.D.Ill.))
&lt; KeyCite History &gt;

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Western Division.

Doris MOTZNY, Plaintiff,
v.
HILANDER FOOD STORES, Defendant.

No. 92 C 20155.

April 11, 1994.

Gordon C. Ring, Loves Park, IL, for plaintiff.

Roberta L. Holzwarth, Holmstrom & Kennedy, Rockford, IL, for defendant.

MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

INTRODUCTION

*1 Plaintiff Doris Motzny brought this age and sex discrimination action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, respectively. The bases of Motzny's claims are her allegations that she was discharged and not transferred to another position based upon her age and sex and that she was denied the ability to earn overtime wages based upon her sex. Defendant Hilander Food Stores moves for summary judgment.

BACKGROUND

In the face of defendant's motion for summary judgment, plaintiff has filed no response to the motion and no statement of facts as required under Local Rule 12N. As a consequence of the latter, the court treats as admitted the uncontroverted facts in defendant's Local Rule 12M statement. See Stewart v. McGinnis, 5 F.3d 1031, 1033-35 (7th Cir.1993). In doing so, the court has carefully reviewed the facts contained in defendant's 12M statement that are relied upon by the court, to ensure they are properly supported by the record. See id. at 1034 (citing Appley v. West, 929 F.2d 1176, 1179-80 (7th Cir.1991)). Even so, the facts therein must be viewed in the light most favorable to the plaintiff and all reasonable inferences taken in her favor.

In November of 1982, plaintiff, at that time 43 years old, became the manager of the deli department at defendant's new Mulford Road store in Rockford, Illinois, a full-time position. Plaintiff had first been hired to work for defendant, at its North Main Street store, earlier that same year. When she became deli manager at the Mulford store, she made $5 per hour. Eventually she reached $10.50 per hour in that position.

On June 15, 1990, plaintiff's immediate supervisor, Terry Kobernat, met with her. He presented her with a piece of paper with several job-related items on it, including, among other items, a listing for "hats," a reference to plaintiff's failure to wear a hat while working behind the deli counter in contravention of defendant's policy. The parties dispute the remaining contents of the piece of paper, but there is no disagreement about the listed items on the paper being job-related. According to plaintiff, the list referred to prior conflicts she and Kobernat had over placement of a soup kettle in response to a health citation and over the deli having run out of potato salad during a holiday.

According to plaintiff, at this June 15 meeting Kobernat stated, "I can't work with you any longer" and then stated, "I'm gonna let you go." When plaintiff reacted to this, Kobernat asserted that it was not because of the hat or soup kettle matters but because he just could not work with her any longer.

Following this meeting, plaintiff made a telephone call to one of the store's owners, John Castrogiovanni, in Arizona. When Castrogiovanni later returned to Rockford,

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

plaintiff talked to him about the possibility of transferring to another store. Several days later, plaintiff received a telephone call from the deli manager of the North Main store, Barb Farrey, in which Farrey discussed placing plaintiff on the work schedule at that store. Sometime after that, however, plaintiff received a call from Castrogiovanni in which he told her "to forget the whole thing." According to plaintiff, Castrogiovanni stated that he was not transferring plaintiff to the other store because plaintiff's salary was too high and several part-time people would have to be discharged in order to accommodate plaintiff's salary.

*2 During her later search for employment, plaintiff received two letters of recommendation. Nick Ancona, the director of purchasing and the deli department supervisor, wrote that plaintiff displayed leadership and responsibility and would be a valued employee for any employer. Castrogiovanni wrote that plaintiff had been an excellent employee and deli manager, that she was trusted and loyal, and, apparently explaining plaintiff's termination to potential future employers, that she and the store manager had "personality conflicts."

In her deposition testimony, plaintiff stated that she had no conversations with any other Hilander employees that would suggest that her termination was based upon age or sex. In regard to age discrimination, plaintiff stated that it was simply her own "feeling" and "opinion" that defendant desired to fire her in order to hire a younger person. She also stated that she could not remember what had led her to the opinion that her termination was based upon age. In regard to sex discrimination, plaintiff stated that the only specific instance of sexually offensive comments by management she could recall involved a "joke" Castrogiovanni made on one instance about battered women. Plaintiff stated, however, that after this "joke" she did not feel fear or discomfort in working for defendant.

In Count I of the complaint, plaintiff alleges defendant engaged in sex discrimination in discharging her and in not transferring her to another store. Plaintiff alleges "[u]pon information and belief, management at the Hilander wanted to terminate older employees and specifically the Plaintiff, and hire a younger Deli Manager." In Count II, plaintiff alleges defendant engaged in sex discrimination in not allowing plaintiff to work more than forty hours per week, in discharging her, and in not transferring her to another store. Plaintiff alleges she was the only female department manager and that her "ideas and suggestions were never considered" while those of male managers were. Plaintiff also alleges her supervisors told sexually explicit jokes and made sexually harassing statements. Finally, plaintiff alleges she was falsely accused of poor job performance.

CONTENTIONS

For the limited purpose of the present motion, defendant concedes that plaintiff was discharged and that plaintiff has established a prima facie case of age discrimination and, with regard to the discharge and transfer allegations, of sex discrimination. Defendant then contends, however, that it has provided a legitimate, nondiscriminatory reason for her discharge and for her not being transferred. In regard to sex discrimination based on not being allowed to work more than forty hours per week, defendant contends that only managers who have opening and closing responsibilities in addition to their other duties are permitted to work overtime. Defendant contends plaintiff did not request opening and closing responsibilities. In the alternative, defendant contends that even if plaintiff has established a prima facie case of sex discrimination in regard to her being denied overtime work, defendant has provided a legitimate, nondiscriminatory reason for that denial and plaintiff has not shown that reason to be a pretext.

*3 Plaintiff has not submitted a response brief.

DISCUSSION

Summary judgment is appropriate where

1994 WL 148716 Page 13
(Cite as: 1994 WL 148716, *3 (N.D.Ill.))

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The inquiry to be made on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "A party bearing the burden of proof on an issue may not simply rest on its pleadings, but must demonstrate that a genuine issue of material fact exists and requires trial." Jamison-Bey v. Thieret, 867 F.2d 1046, 1047 (7th Cir.1989).

a. Discharge and Transfer

In order to prove age discrimination in violation of the ADEA or sex discrimination in violation of Title VII, a plaintiff must employ one of two methods. First, she may present direct or circumstantial evidence of discrimination. Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1122 (7th Cir.1994). In the present case, plaintiff has not alleged or presented, and the court does not find in the record, direct or circumstantial evidence of discrimination. [FN1] Second, a plaintiff may utilize the burden-shifting method of proof originally developed for Title VII cases and later adapted to ADEA claims. [FN2] Id.

Under the first step of this burden-shifting method of proving discrimination, a plaintiff must establish a prima facie case of discrimination. Anderson, 13 F.3d at 1122. In the present case, for the limited purposes of the present motion, defendant concedes establishment of a prima facie case of age and sex discrimination both in regard to plaintiff's discharge and the refusal to transfer her to another store. Once a prima facie case has been established, plaintiff receives the benefit of a rebuttable presumption of discrimination. Id.

Under the second step of the burden-shifting method, a defendant then has the opportunity, and burden, of rebutting that presumption by demonstrating a legitimate, nondiscriminatory reason for the discharge. Anderson, 13 F.3d at 1122. In the present case, defendant has presented evidence of multiple legitimate, nondiscriminatory reasons for discharge and, therefore, has rebutted the presumption of discrimination created by its concession of a prima facie case. Plaintiff's supervisor, Kobernat, was concerned with certain aspects of the management of the deli department. In plaintiff's own deposition testimony, she outlined conflicts with Kobernat over location of a soup kettle in response to a health citation, over the deli having run out of potato salad during a holiday, and over wearing a hat while working at the deli counter. According to the deposition testimony of Robert Reitmeier, dairy department manager at the Mulford store, problems with the management of the deli department had been brought up several times at biweekly department head meetings in such a way that it was apparent the problems had not been resolved. Further, the stated reason for plaintiff's discharge, both according to plaintiff's account of the termination meeting and according to the letter of recommendation Castrogiovanni wrote for her, was a personality conflict between Kobernat and plaintiff. In plaintiff's account of Kobernat's words, he "just [couldn't] work with [her] any longer." Such a personality conflict between supervisor and employee is, by itself, a legitimate, nondiscriminatory reason for discharge.

*4 Under the third step of the burden-shifting method, a plaintiff has the opportunity, and burden, to show the employer's proffered reasons for discharge were, in fact, a pretext for discrimination. Anderson, 13 F.3d at 1122 (citing Weihaupt v. American Medical Ass'n, 874 F.2d 419, 426-27 (7th Cir.1989)). In the present case, plaintiff has come forward with, and the court finds, no evidence that any of defendant's proffered reasons for discharge were pretexts for either age or sex discrimination. The burden belongs to plaintiff to produce evidence from which a rational trier of fact could infer that defendant's proffered reason for its action is pretextual. Id. at 1124. Here, plaintiff has not in any sense satisfied that burden.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

1994 WL 148716 Page 14
(Cite as: 1994 WL 148716, *4 (N.D.Ill.))

In regard to defendant's refusal to transfer plaintiff to another store, defendant has, likewise, established a legitimate, nondiscriminatory reason for its action, rebutting the presumption of discrimination created by its concession of a prima facie case, and plaintiff has come forward with, and the court finds, no evidence that defendant's proffered reason was a pretext for either age or sex discrimination. According to plaintiff's own account of her conversation with Castrogiovanni, defendant's reason for not transferring plaintiff to another store was because defendant would have to discharge several part-time employees at the other store in order to fit plaintiff's salary within that store's deli budget. Such a refusal to fire other employees is a legitimate basis for an employment decision. Further, defendant has provided evidence that plaintiff's salary was far outside the upper end of its range for deli clerks, the position to which plaintiff sought transfer. The court notes that the Supreme Court has held that it is not age discrimination for an employer to take an action based upon a factor other than age, even when that factor correlates with age, as pension status and seniority do. See Hazen Paper Co. v. Biggins, 113 S.Ct. 1701, 1705-06 (1993); Anderson, 13 F.2d at 1125. Thus, if defendant's motivation for not transferring plaintiff were shown to be her wage rate, that still would not constitute age discrimination.

b. Overtime

Defendant has provided evidence that overtime was only allowed for department managers who had responsibility for opening and closing the store, meaning that plaintiff's allegation is, in essence, one of discrimination in denying promotion. In order to establish a prima facie case of discrimination for refusal to promote, a plaintiff must establish that (1) she was a member of a protected class, (2) she applied for and was qualified for the promotion, (3) she was rejected, and (4) the employer continued to seek other applicants or promoted someone from outside the protected class. See Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1472-73 (7th Cir.), cert. denied, 62 U.S.L.W. 3318 (1993); Babrocky v. Jewel Food Co., 645 F.Supp. 1396, 1419 (N.D.Ind.1986). Defendant contends plaintiff has failed to establish that she would have applied for the promotion if she had known of its availability, a requirement under the second prong of the prima facie case. See Box v. A & P Tea Co., 772 F.2d 1372, 1376-77 (7th Cir.1985), cert. denied, 478 U.S. 1010 (1986). [FN3]

*5 Plaintiff has failed to present any evidence that she applied for or otherwise sought opening and closing responsibility, or that she was disposed to do so. Further, even if plaintiff were to have established a prima facie case, she has not produced, and the court has not found, any evidence from which a rational trier of fact could infer that defendant's proffered legitimate, nondiscriminatory reason for not granting her overtime, that such responsibility did not go with the deli manager position, was pretextual. Plaintiff has failed to provide evidence in support of her allegation that she was the only female department manager at the Mulford store. In fact, defendant has presented evidence that at the time plaintiff was fired, there were three female managers at the Mulford store. In addition, defendant has presented evidence that at least one female manager has held opening and closing responsibilities entitling her to overtime.

CONCLUSION

For the reasons stated above, the court finds that no genuine issue of material fact exists and that defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is, therefore, granted.

> FN1. In her complaint, plaintiff alleged that agents of defendant on occasion made sexually offensive statements. The only evidence she has produced to support this allegation, however, is her own deposition testimony that on a single occasion Castrogiovanni made a "joke" about battered women. While a comment demonstrating discriminatory animus may be relevant evidence of discrimination, "a slur is not in and of itself proof of actionable discrimination, even if repeated." Shager v. Upjohn Co., 913 F.2d 398, 402 (7th

Cir.1990). In order for such remarks to support an inference of sex discrimination, they must be shown somehow to relate to the employment decision. McCarthy v. Kemper Life Ins., 924 F.2d 683, 686 (7th Cir.1991) (citing Price Waterhouse v. Hopkins, 490 U.S. 228, 251 (plurality opinion) & 277 (O'Connor, J., concurring) (1989)). Here, plaintiff has shown no such nexus between Castrogiovanni's one "joke" and the discharge decision or the transfer decision.

FN2. The major differences between utilizing the burden-shifting method for sex discrimination and age discrimination claims involve the elements of the prima facie case, which are not involved in analysis of plaintiff's discharge and transfer claims here. The actual burden-shifting method is the same under each statute, as is illustrated by the Seventh Circuit's reliance in Anderson, an age discrimination case, on St. Mary's Honor Society v. Hicks, 113 S.Ct. 2742 (1993), a sex discrimination case, for analysis of its most important issue. See 13 F.3d at 1123-24.

FN3. Under Box, if an employer has a system of posting job openings and allowing application for them, applying for an opening is a hard and fast requirement for establishing a prima facie case of discrimination. 772 F.2d at 1376-77. This requirement is loosened somewhat where an employer instead seeks out the employees it promotes. Id. In the latter case, however, a plaintiff must still establish that she would have sought the promotion if she had known about it. Id. Here, plaintiff has introduced no evidence from which a rational trier of fact could infer that if she had known about the opportunity to apply for a position involving opening and closing responsibility, she would have sought one.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works