UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6002-CIV-UNGARO-BENAGES

DENISE BROOKINS,
    Plaintiff,
vs.

MARTY SHOES,
    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

FILED by _____ D.C.
JAN 2 4 2001
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment ("Motion"), filed November 3, 2000.

THE COURT has reviewed the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises. On December 17, 1999, Plaintiff filed a Complaint in Broward Circuit Court alleging Defendant terminated her employment based on race discrimination and retaliation in violation 42 U.S.C. § 1981. On January 3, 2000, Defendant removed the action to this Court. Defendant now moves for summary judgment on the ground that Plaintiff cannot establish a *prima facie* case of discrimination or retaliation and Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff's employment. For the following reasons, Defendant's motion will be denied.

**LEGAL STANDARD**

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. S*ee Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The *Adickes* Court explained that when assessing

whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See Adickes*, 398 U.S. at 157; *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997) (citing *Adickes*).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrell*, 477 U.S. 317 (1986); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the Court should deny summary judgment. *See Impossible Electronic Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence.

*See Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *See Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## FACTUAL BACKGROUND

The following material facts are viewed in the light most favorable to Plaintiff, the non-movant herein.[1]

*Race Discrimination*

Plaintiff, an African-American female, worked at Marty Shoes as a part-time salesperson in the Sawgrass Mills Mall store for a period of eight months from December 1995 until June 1996 when she was terminated. Pla.'s Depo. at 27, 28. Plaintiff was hired by Carmen, the store manager, and her initial supervisor. *Id.* at 28. In early 1996, Roma Rybitwa was promoted to store manager. *Id.* at 30; Dzioba Decl. ¶ 3. Approximately two months after Rybitwa assumed this position, she and Plaintiff began having arguments. Pla.'s Depo. at 58. The initial conflict between Plaintiff and Rybitwa arose because Rybitwa had assigned Plaintiff to work at times that conflicted with Plaintiff's school class schedule. After Plaintiff notified Rybitwa of the problems, Rybitwa arranged Plaintiff's work schedule around her classes. *Id.* at 58-59, 61-62.

---

[1] The Court notes that pursuant to Local Rule 7.5, all facts stated in Defendant's Statement of Undisputed Facts that Plaintiff has not specifically controverted are deemed undisputed for the purposes of this Motion.

Thereafter, the working relationship between the two women deteriorated. Plaintiff testified that she argued with Rybitwa "a thousand" times. Plaintiff stated they had at least one argument a day and that Plaintiff lost her temper with Rybitwa "numerous" times. *Id.* at 182-83. According to Plaintiff, Rybitwa criticized numerous aspects of Plaintiff's work performance.

> [Rybitwa] criticized my socialization with Agnes and Orlando. She criticized me not telling the security that four black males had taken shoes. She criticized my dress code. She criticized me standing up for her with the derogatory remarks. She criticized the time conflict with the hours that she gave me. She criticized me notifying John Adams. She criticized me going to the rest room at will. She criticized the work performance that I had. She criticized me answering the phone. She criticized me telling her she discriminated against me.

*Id.* at 62-63. In the course of these arguments Plaintiff testified that Rybitwa not only accused her of "dozens of different things," including drinking on the job, walking off and giving shoes to Burlington employees, but also called her "derogatory" names. *Id.* at 182. According to Plaintiff, Rybitwa called her a "street person," "thug," "you people," "drug addict," and told her she was "not the right person to work there." Pla.'s Aff. ¶ 6; Pla.'s Depo. at 111-112.

Likewise, alleged problems with the amount of Plaintiff's paychecks led to further arguments with Rybitwa. Pla.'s Depo. at 96-102. After Plaintiff complained to Rybitwa that her paychecks were "short," Plaintiff contacted John Adams, vice president of Marty Shoes by telephone and letter to resolve the problem. *Id.* at 97-100. Apparently, Rybitwa got a call from the home office regarding Plaintiff's letter to Adams and thereafter told Plaintiff "not to contact [New Jersey] concerning anything at the store" and called her a "vagabond." When Plaintiff asked Rybitwa what she meant by "vagabond," Rybitwa said "you people don't want to work, you just want to come and cause problems." *Id.* at 115.

In addition, Plaintiff testified that Rybitwa treated her differently than all the other

employees, none of whom were black. Pla.'s Aff. ¶ 3; Pla.'s Depo. at 138, 161-64, 184. During one argument, Rybitwa told Plaintiff that she was "the only one giving her problems." Pla.'s Depo. at 110. Plaintiff said she watched Rybitwa's "interactions with her Polish people, her friends of another race and she got along well with them." *Id.* at 244. To Plaintiff's knowledge, Rybitwa never lost her temper with other employees. *Id.* at 245. Likewise, Plaintiff stated that Rybitwa favored other employees who lived in the same apartment complex or were her friends. *Id.* at 167, 170.

In this regard, Plaintiff testified that unlike other employees such as Kim Chin, she was not allowed to go to the rest room without first notifying Rybitwa. *Id.* at 107, 138. According to Plaintiff, Chin did not have to tell Rybitwa when she was going to the bathroom because "she didn't have a problem with Kim. I could see the way they interacted. They laughed together. They went to lunch together. They had a pleasant relationship." *Id.* at 139. Similarly, Plaintiff claims she was the only employee not allowed to answer the employer's telephone, *id.* at 138, 141-49; the only person required to display her shoes to Rybitwa to make sure she was not stealing, *id.* at 107, 140-41; the only employee in the store not allowed to assist customers at the cash register, *id.* at 165; the only employee not allowed to give customers discounts on damaged shoes, Pla.'s Aff. ¶ 12; and the only employee whose breaks were limited to ten minutes, *id.* ¶ 10. Plaintiff also testified that Rybitwa told the other employees not to talk to her. *Id.*

Plaintiff further stated that even though Defendant has a policy of providing written counseling for performance and conduct that fell below standard, she only received written counseling on one occasion when she came in late. Exhibit 8. Plaintiff claims she was never warned

5

about her performance because it was at or above the company's standards. Pla.'s Aff. ¶ 14(b).[2]

*Retaliation*

Plaintiff testified that in or about May or June she wrote a letter to and talked in person with Stanley Dzioba, the district manager, about the problems she was having with Rybitwa, including the name calling, the reduction in hours and the "harassment." Pla.'s Depo. at 73, 255. According to Plaintiff, however, he did not investigate her complaints or reply. *Id.* at 175, 217, 247, 254. Rather, he told Plaintiff that "he had no jurisdiction over the store. He wasn't the store manager and that was separate from his duties." *Id.* at 256.

After Dzioba did not respond to Plaintiff's verbal and written complaints, Plaintiff sent a letter to John Adams, vice president of Marty Shoes' corporate offices informing him that her hours had been reduced in retaliation. *Id.* at 218. A copy of this letter was also sent to Dzioba. *Id.* at 217-18, 249; Exhibit A. According to Plaintiff, immediately after she filed her complaints, she was retaliated against by having her hours further reduced.[3] *Id.* at 217, 259. During the last week of Plaintiff's employment, she was scheduled to work only one hour. Pla.'s Aff. ¶ 14.

Toward the end of June 1996, Rybitwa told Plaintiff that she was going on vacation the following week and the schedule for that week had not yet been printed. Pla.'s Depo. at 48. Thereafter, Plaintiff went into work and found a note from Rybitwa instructing her to call Dzioba. Def.'s Exhibit 7; Pla.'s Depo. at 104. According to Dzioba, Rybitwa had asked him to "let [Plaintiff] know her employment with Marty's Shoes was over while [Rybitwa] was away on

---

[2] The Court notes that Plaintiff's Affidavit contains two paragraphs numbered 14. To avoid confusion, the Court will refer to the first as 14(a) and the second as 14(b).

[3] Plaintiff worked on average 16 hours a week in March, 8 hours a week in April, 3 1/2 hours a week in May and 2 hours a week in June. Def.'s Exhibit 5.

6

vacation."[4] Dzioba Decl. ¶ 9. When Plaintiff called Dzioba to find out about her work schedule, he informed her that her employment was terminated. Pla.'s Depo. at 47-49, 93-94.

## LEGAL ANALYSIS

Plaintiff asserts that Defendant unlawfully terminated her employment based on her race and retaliation in violation of 42 U.S.C. § 1981.[5] Section 1981 covers claims for intentional racial discrimination in "the making, performance, modification, and termination of [employment] contracts" and in "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). A successful § 1981 claim requires proof of intentional discrimination. *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 949 (11th Cir. 1991). The framework for resolving intentional discrimination claims under § 1981 is the same as the formulation used in Title VII disparate treatment cases. *Id.*

(1) *Race Discrimination*

In order to prevail on a § 1981 disparate treatment claim, a Plaintiff must initially establish a *prima facie* case of discrimination by demonstrating that the defendant acted with "discriminatory intent." *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995). A plaintiff can prove discriminatory intent through either direct or circumstantial evidence. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077,

---

[4] Dzioba previously had advised Rybitwa to fire Plaintiff, but Rybitwa told him that she was "afraid to do so as a result of the continued confrontations she was having with [Plaintiff]." Dzioba Decl. ¶ 8.

[5] Section 1981 states: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

1081 (11th Cir. 1990). Direct evidence is "evidence which, if believed, would prove the existence of discrimination without inference or presumption." *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997) (quoting *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989)). "Direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998) (quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)). "For statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged decision." *Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453-54 (11th Cir. 1996) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276-77 (1989)). *See e.g., Miles v. M.N.C. Corp.*, 750 F.2d 867, 873-74 (11th Cir. 1985) (finding direct evidence of racial discrimination when a plant manager stated that he would not hire blacks because "half of them weren't worth a shit"); *Thompkins v. Morris Brown College*, 752 F.2d 558, 561 (11th Cir. 1985) (finding direct evidence of sex discrimination when president of defendant college allegedly said that he saw no reason for a woman to have a second job and vice president of academic affairs of defendant college stated that the reason that plaintiff could not have four classes in the afternoon like the men was because those males had families and needs that the plaintiff did not have); *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1553 (11th Cir. 1983) (noting direct evidence of discrimination when plaintiff and the union representative testified that the production manager had said that he would not put plaintiff in the washroom because if he did "every woman in the plant would want to go into the washroom").

a. *Direct Evidence of Race Discrimination*

To prove intentional discrimination by direct evidence a plaintiff must establish by a

preponderance of the evidence that (1) the decision maker had a discriminatory animus towards the plaintiff, *see International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (stating that in disparate treatment cases, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment"), (2) an alteration in the terms and conditions of her employment by the employer, and (3) a causal link between the two. *Llampallas v. Mini Circuits, Lab Inc.*, 163 F.3d 1236, 1245-46 (11th Cir. 1998).

To prove her claim of intentional discrimination by direct evidence Plaintiff points to several comments made by Rybitwa, the store manager and one of allegedly two people with decision making power to terminate Plaintiff's employment. Pla.'s Depo. at 117. Plaintiff testified that Rybitwa called her a "street walker" or "street person" during an argument the two women had regarding the arrangement of shoes on a rack. *Id.* at 112-113. According to Plaintiff, a "street walker" is "homeless, dirty, doesn't want to work, a low life, a bum." *Id.* at 113-14. Although Plaintiff's definition of a "street walker" did not include any terms connoting racial bias, Plaintiff surmised that the comment had to do with her race because "I was the only black person there" and the only person Rybitwa called a "street walker" or "street person." *Id.* at 114.

Similarly, Plaintiff testified that Rybitwa called her a "vagabond" in an argument they had after Plaintiff wrote a letter to John Adams, vice president of Marty Shoes about her paychecks. *Id.* When Plaintiff asked Rybitwa what she meant by "vagabond," Rybitwa said "you people don't want to work, you just want to come and cause problems." *Id.* at 115.

Plaintiff also testified that Rybitwa called her a "thug" when they had an argument about whether a group of African-American males who were dressed like "gang" members had stolen a pair of shoes. *Id.* at 179. According to Plaintiff, Rybitwa accused Plaintiff of taking the side of the

African-American shoppers because Plaintiff was black. *Id.* at 178-79. Likewise Plaintiff testified that Rybitwa called her a "drug addict" and told her she was not the "right person to work there." Pla.'s Aff. ¶ 6; Pla.'s Depo. at 111-112.

Although Plaintiff inferred a discriminatory animus from these statements, the Court finds that they are not the type of "blatant remarks" from which race discrimination can be found without the aid of an inference. If the statements are accepted as true, a rational jury could infer from them that Rybitwa was discriminating against Plaintiff because she was black. At the same time, however, a rational jury could also infer that Rybitwa made these comments because she did not like Plaintiff. Given the various inferences that may be drawn from these statements, the Court finds that Plaintiff has not presented any direct evidence of discrimination. *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir. 1999) (finding statements did not constitute direct evidence of race and sex discrimination because of the differing inferences that could be drawn from them).

b. *Circumstantial Evidence of Race Discrimination*

*Prima Facie Case*

Besides relying on direct evidence to prove discriminatory intent, Plaintiff also relies on circumstantial evidence. To prove discrimination based on circumstantial evidence, Plaintiff must meet the four-pronged test established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dept. of Community of Affairs v. Burdine,* 450 U.S. 248 (1981). *See Turnes v. AmSouth Bank,* 36 F.3d 1057, 1060 (11th Cir. 1994) (stating the *McDonnell Douglas* scheme for the allocation of burdens and the order of presentation of proof also applies in § 1981 cases involving discriminatory treatment in employment situations). Under the *McDonnell Douglas/Burdine* test, the plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. *See*

*McDonnell Douglas,* 411 U.S. at 802. To establish a *prima facie* case of unlawful termination due to race discrimination pursuant to § 1981, the Plaintiff must produce evidence which, if believed, would satisfy the following four prerequisites: (1) the plaintiff belonged to a statutorily protected group; (2) the plaintiff was qualified for the job in issue; (3) the plaintiff's status as an employee suffered an adverse impact; and (4) the plaintiff was treated differently than similarly situated employees. *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).

As part of the *prima facie* case, the plaintiff must show her employer treated similarly situated employees outside her classification more favorably than herself. *Coutu v. Martin Cty. Bd. of Cty. Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995). To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that she and the employees are similarly situated in all relevant respects. *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). To be similarly situated "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. *See also Gerwens*, 874 F.2d at 1540-41. In making this claim, the burden is on plaintiff "to show a similarity between [his] conduct and that of white employees who were treated differently and not on [the defendant] to disprove their similarity." *Tate v. Weyerhaeuser*, 723 F.2d 598, 603 (8th Cir. 1983). *See Burdine*, 450 U.S. at 258 (stating "it is the plaintiff's task to demonstrate that similarly situated employees were not treated equally"). If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.

According to Plaintiff, Rybitwa treated her less favorably than all the other salespeople at the Sawgrass Mills store. Unlike Plaintiff, the other employees were given more hours, Pla.'s Depo. at 136, were allowed to go to the restroom without first notifying Rybitwa, *id.* at 107, 138, were allowed to answer the employer's telephone, *id.* at 138, 141-49, were allowed to leave the store without showing Rybitwa their shoes at the end of their shift, *id.* at 107, 140-41, were allowed to give customers discounts on damaged shoes, *id.* at 162-64, were allowed to assist customers at the cash register, *id.* at 165, and were allowed to take breaks longer than ten minutes. Pla.'s Aff. ¶ 10. Also, Rybitwa did not use demeaning names or phrases, such as "thug" or "you people," to refer to the other employees. Based on this evidence, the Court finds that Plaintiff was treated differently than similarly situated shoe salespeople who were also supervised by Rybitwa.

In making this determination the Court rejects Defendant's argument that to establish the similarly situated element of the *prima face* case the Plaintiff must point to a non-minority who had a contumacious relationship with Rybitwa and yet was treated more favorably  The Court declines to frame the similarly situated analysis as narrowly as Defendant proposes because it appears that on this record a reasonable fact finder could infer that the poor relationship between Rybitwa and Plaintiff that ultimately resulted in Plaintiff's termination actually developed because Rybitwa constantly demeaned Plaintiff. Thus, Defendant's attempt to solely rely on the contumacious relationship as defining the relevant similarly situated employee fails because in this particular case it impermissibly seeks to raise the bar of what a plaintiff must show to establish a *prima facie* case of race discrimination.

Likewise, Defendant claims that Plaintiff has not established a *prima facie* case of race discrimination because Plaintiff has not shown that she was qualified for the position. Dzioba Decl.

12

¶ 7. Defendant relies exclusively on the evidence of Rybitwa and Plaintiff's volatile relationship to support this contention. As stated above, this evidence does not defeat Plaintiff's *prima facie* case of race discrimination because Rybitwa's poor relationship with Plaintiff is intertwined with Plaintiff's claim that Rybitwa was motivated by racial animus.

*Defendant's Burden*

Once plaintiff has established a *prima facie* case of race discrimination, the burden shifts to defendant to produce a "legitimate nondiscriminatory reason" for terminating plaintiff. "The defendant's explanation of its legitimate reasons must be clear and reasonably specific" so that "the plaintiff be afforded a full and fair opportunity to demonstrate pretext." *Burdine*, 405 U.S. at 258. A subjective reason is a legally sufficient, non-discriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion. *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000).

Defendant argues its legitimate non-discriminatory reason for reducing Plaintiff's hours and ultimately terminating her employment was Plaintiff's poor working relationship with Rybitwa. Dzioba Decl. ¶¶ 5, 8. Defendant primarily relies on Plaintiff's testimony that the two women had a hostile relationship to support its legitimate non-discriminatory reason for its decision. Although it is uncontested that Plaintiff and Rybitwa did not get along, Pla.'s Depo. at 182-83, the Defendant may only rely on this subjective reason to support its termination decision as long as it is based on objective indicators. *Chapman*, 229 F.3d at 1034; *Woody v. St. Clair County Comm'n*, 885 F.2d 1557, 1562-63 (11th Cir. 1989) (affirming district court's judgment that employer's subjective evaluation of how long employee would stay on the job was not pretextual because it was based on objective indicators); *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495, 1500 (11th Cir. 1985) (noting

13

a subjective reason "is legally sufficient to satisfy the employer's burden of produc[ing] [a legitimate, non-discriminatory reason] so long as its is capable of objective evaluation"). Apart from Dzioba's declaration cataloging the complaints he received from Rybitwa regarding her relationship with Plaintiff, Defendant has not offered any evidence tending to refute Plaintiff's claim that the underlying basis for Rybitwa's contumacious relationship with Plaintiff was racism that began with Rybitwa subjecting Plaintiff to undue scrutiny and constant criticism, progressed to name calling and a reduction in her work hours and ultimately culminated in Plaintiff's termination. Thus, the Court finds that because Defendant claims to have terminated Plaintiff's employment as a result of Rybitwa and Plaintiff's poor relationship, a purely subjective factor, and Defendant has not offered any objective criteria in support thereof, reasonable minds could differ on the inferences to be drawn from the evidence.

*Pretext*

Assuming Defendant met its burden of articulating a legitimate, non-discriminatory reason for its adverse employment action, Plaintiff, to defeat summary judgment, must raise a genuine issue of material fact that the employer's reason was a pretext. *Maddox v. Procter & Gamble, Co.*, 107 F.3d 846, 851 (11th Cir. 1997). The plaintiff does not have the burden of actually proving pretext. *Id.* The only issue to be considered by the judge is whether the plaintiff's evidence has placed material facts at issue. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 921 (11th Cir. 1994).

Plaintiff argues, and the Court agrees, that there is a genuine issue of material fact regarding Rybitwa's motivation for treating Plaintiff less favorably than other employees and calling her derogatory names. In this regard and by way of example, a reasonable fact finder could infer that Rybitwa was motivated by racial animus when she referred to Plaintiff as "you people" and called

14

her a "thug." Pla.'s Depo. at 111-12. Likewise, Defendant fails to address the possibility that Rybitwa's unequal treatment of Plaintiff and Rybitwa's poor relationship with Plaintiff was the product of racial animus. Accordingly, the Court will deny Defendant's Motion for Summary Judgment on the race discrimination claim because a reasonable jury could infer that Defendant's explanation for Plaintiff's termination is a mere pretext for race discrimination. *Maddow v. Procter & Gamble, Co.*, 107 F.3d 846, 851 (11th Cir. 1997);

(2) *Retaliation*

Plaintiff also alleges that her hours were further reduced and she was ultimately discharged by Marty Shoes in retaliation for complaining to Dzioba and Adams that Rybitwa had reduced her hours and discriminated against her because of her race. Pla.'s Aff. ¶¶ 14(a), 16; Exhibit A to Pla.'s Aff.

The burden of proof in a retaliation case is governed by the framework established in *McDonnell Douglas Corp. v. Green*. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162 (11th Cir. 1993). To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she engaged in protected activity; (2) she suffered adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999); *Little v. United Technologies*, 103 F.3d 956, 959 (11th Cir. 1997).

A plaintiff establishes a *prima facie* case of retaliation under the opposition clause of Title VII if she shows that she had a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d

397, 400 (11th Cir. 1989).[6] A plaintiff's burden under this standard has both a subjective and an objective component. *Little*, 103 F.3d at 960. A plaintiff must not only show that she subjectively (that is, in good faith) believed that her employer was engaged in unlawful employment practices, but also that her belief was objectively reasonable in light of the facts and record presented. *Id.* Thus, it is not enough for a plaintiff to allege that her belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable. *Id..*

Plaintiff argues that she engaged in protected activity when she complained to Dzioba and Adams by letter and phone of Rybitwa's discriminatory animus and the disparate treatment she received at work. In this regard, Plaintiff's May 27, 1996 letter "To District Manager of Marty's Shoes" stated that "when a person is practing [sic] Racism I feel the District Manager should be aware of what she's [Rybitwa] is doing. . . I don't deserve this Racist treatment . . . I'm not writing this letter because I'm angry I'm writing because I never did anything to deserve this treatment or harassment." 5/27/96 Letter at 2-3. After considering the letter and Plaintiff's testimony, the Court finds that Plaintiff subjectively believed that she was discriminated against because of her race and objectively believed that the Rybitwa's comments and the reduction in her work hours were based on discriminatory animus. *See Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) (stating statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual

---

[6] It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. S 2000e-3(a) (1982).

16

harassment); *Rollins v. Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (recognizing that the protection afforded by the statute extends to informally voiced complaints to superiors or through their employers' internal grievance procedures). Likewise, the Court also finds that Plaintiff has produced sufficient evidence to establish a causal link between her complaints of race discrimination to Dzioba and Adams and the steady reduction in her work hours. *Little*, 103 F.3d at 959.

Because Plaintiff established a *prima facie* case of retaliation, the burden shifts to Defendant to offer a legitimate, non-discriminatory explanation for its action. As discussed in the section on Race Discrimination, Plaintiff has raised a genuine issue of material fact regarding whether Defendant's legitimate, non-discriminatory reason for terminating Plaintiff's employment was a pretext for discrimination. *Hairston v. Gainesville Sun Publ'g*, 9 F.3d 913, 919 (11th Cir. 1993). Accordingly, the Court will decline Defendant's Motion for Summary Judgment on the retaliation claim. Based on the foregoing, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is DENIED.

DONE AND ORDERED in Chambers in Miami, Florida this _24_ day of January, 2001.

　　　　　　　　　　　　　　　　　　　　　Ursula Ungaro-Benages
　　　　　　　　　　　　　　　　　　　　　URSULA UNGARO-BENAGES
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record