1

1 IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
      IN AND FOR BROWARD COUNTY, FLORIDA
2
              CASE NO. 00-6002-CIV
3

4 DENISE BROOKINS,

5          Plaintiff,
  vs.
6
  MARTY SHOES, INC.,                    ORIGINAL
7
           Defendant,
8 _____/

9

10
      DEPOSITION OF STEWART LEE KARLIN, ESQUIRE.
11

12
            FRIDAY, JUNE 8TH, 2001
13    ONE EAST BROWARD BOULEVARD, SUITE 1300
            FORT LAUDERDALE, FLORIDA
14           1:15 p.m. - 1:25 p.m.

15

16

17
  APPEARANCES:
18
      NO APPEARANCE
19    ON BEHALF OF THE PLAINTIFF.

20
      ON BEHALF OF THE DEFENDANT.
21    ERIC GABRIELLE, ESQUIRE.
      HOLLAND & KNIGHT, LLP.
22

23

24

25

ESQUIRE DEPOSITION SERVICES (954-331-4400

```
                                                                    2
 1                              INDEX

 2   WITNESS                DIRECT   CROSS   REDIRECT   RECROSS
     STEWART KARLIN
 3
     BY MR. GABRIELLE          3
 4

 5

 6

 7

 8

 9                            EXHIBITS

10   DEFENDANT'S                            FOR IDENTIFICATION

11   NO. 1   RULES OF PROFESSIONAL CONDUCT    PAGE 3
     NO. 2   3/15/01 LETTER                   PAGE 3
12   NO. 3   NOTICE OF SETTLEMENT             PAGE 3
     NO. 4   MOTION TO RESCHEDULE TRIAL DATE  PAGE 3
13   NO. 5   AFFIDAVIT                        PAGE 3

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1   Deposition of STEWART LEE KARLIN, ESQUIRE,
2   taken before VALERIE LEHTO, Court Reporter/
3   Registered Professional Reporter and Notary
4   Public in and for the State of Florida at Large,
5   in the above cause.
6
7                  ------------
8
9   Thereupon,
10
11          STEWART LEE KARLIN, ESQUIRE
12   having been first duly sworn or affirmed, was
13   examined and testified as follows:
14
15          (Whereupon, Defendant's Exhibit
16       Numbers One through Five consecutively were
17       marked for Identification).
18
19              DIRECT EXAMINATION
20
21   BY MR. GABRIELLE:
22       Q.   Mr. Karlin, as you know, my name is
23   Eric Gabrielle in this lawsuit filed by Denise
24   Brookins.  I represent the Defendant, Marty
25   Shoes, Incorporated.

4

1    Q. You are appearing here today pursuant
2    to a subpoena that was served upon you by Marty
3    Shoes; is that correct?
4    A.    That's correct.
5    Q.    Sir, I'm going to ask you a series of
6    questions. If at any time you don't understand a
7    question, please ask me to restate it and I will
8    do so.
9    A.    Okay.
10   Q.    Mr. Karlin, you are an attorney
11   licensed by the State of Florida; is that
12   correct?
13   A.    That's correct.
14   Q.    And previously you have served as
15   counsel for the Plaintiff, Denise Brookins in
16   this case; is that correct?
17   A.    That is correct.
18   Q.    And do you continue to serve as Denise
19   Brookins' counsel?
20   A.    No, I don't. I was relieved as her
21   attorney.
22   Q.    You were relieved as her attorney by
23   the Court?
24   A.    That is correct.
25   Q.    And what prompted your request to the

5

1   Court that you be relieved as her attorney?
2       A.   Basically my client fired me.
3       Q.   As an attorney licensed by the State of
4   Florida, you recognize that you are governed by
5   the Florida Rules of Professional Conduct; is
6   that correct?
7       A.   That is correct.
8       Q.   I direct your attention to Exhibit One
9   in this case, specifically Rule 4-1.2, subsection
10  (a) concerning scope of representation and the
11  lawyer's obligation to abide by the client's
12  decisions.  I'd like to direct your attention to
13  the second sentence of that paragraph.  It
14  states:  "A lawyer shall abide by a client's
15  decision whether to make or accept an offer of
16  settlement of a matter," and my only question to
17  you, sir, is at all times during your
18  representation of Denise Brookins, did you adhere
19  to that rule?
20      A.   Yes, I did.
21      Q.   I'd like to direct your attention to
22  Exhibit Two which purports to be a letter from
23  yourself to me --
24      A.   Right.
25      Q.   -- dated March 15th of 2001.  Do you

```
 1   recognize that document?
 2        A.   Yes, I do.
 3        Q.   -- as a letter you sent to me prepared
 4   on or about March 15th of 2001?
 5        A.   Right.
 6        Q.   What prompted the amount identified in
 7   that letter as a settlement amount in this case?
 8        A.   Well, as you recall, there was a
 9   mediation that was held by Magistrate Judge
10   Palermo.  The date escapes me.  It's either March
11   14th or 15th.  And we mediated the case all
12   morning and my client had to go to work
13   approximately 1:00 or 1:30 and her final demand
14   was she wanted thirty-five thousand dollars, she
15   used the term consideration for herself, and I
16   had wanted at least a ten thousand dollar fee for
17   the work I had previously rendered even though it
18   was on a contingency basis.  My fee would have
19   been more.  So basically she had to leave, but
20   she wanted thirty-five thousand dollars for
21   herself and she said the offer - words to the
22   effect that the offer would remain open, and she
23   left and then subsequently that afternoon within
24   hours of the mediation I believe we had some
25   communication and the Defendant had offered
```

7

1   forty-two thousand five hundred dollars which was
2   actually two thousand five hundred dollars short
3   of what she initially wanted for the settlement
4   which was thirty-five thousand dollars.  I
5   reduced my attorneys fee by twenty-five hundred
6   dollars in order to meet her demand of
7   thirty-five thousand dollars.
8        Q.   So your understanding of your client's
9   demand at the close of the settlement conference
10  before Judge Palermo was thirty-five thousand
11  dollars plus attorneys fees?
12       A.   That's correct.
13       Q.   And your understanding of the
14  settlement that was agreed upon by counsel for
15  the Defendant, which was myself and you, was
16  thirty-five thousand dollars plus attorneys fees;
17  is that correct?
18       A.   That's correct.
19       Q.   At any time after the offer was
20  extended at the settlement conference by Miss
21  Brookins of thirty-five thousand dollars plus
22  attorneys fees, at any time after that point up
23  until the conversation that you and I had
24  finalizing the settlement on those terms, at any
25  time during that period did Miss Brookins limit

8

1  in any way your authorization to conduct
2  settlement discussions on her behalf?
3      A.  No.
4      Q.  At any time during that same period did
5  Miss Brookins tell you that you were in any way
6  limited in your ability to accept a response to
7  her settlement demand?
8      A.  No.
9      Q.  Did Miss Brookins furnish you during
10 that same time period with anything in writing
11 indicating that your authority to represent her
12 was limited?
13     A.  No.  Not in connection with the
14 mediation, no.
15         We had some letters going back and
16 forth, but at the mediation she wanted
17 thirty-five thousand dollars at the close of the
18 mediation, she indicated that that was her
19 basically bottom line, she wasn't going to budge
20 off that and she said that was the offer and it
21 was open, and she said it in front of everybody.
22     Q.  And by everybody, you mean yourself,
23 Judge Palermo -- By your recollection, at least
24 yourself, myself and Marty Shoes client
25 representative?

1   A.   Right.

2        I think Judge Palermo, I don't know if
3   he heard that comment but he heard, I think, that
4   she wanted at some point in time thirty-five
5   thousand dollars.  I think he was privy to one of
6   the conversations, and I think Judge Palermo's
7   reaction was -- Well, whatever his reaction was
8   it was, but I think that specific conversation is
9   whether or not the door was open.  I don't know
10  if he was present at that, but he was clearly
11  present during some of the conversations when she
12  indicated she wanted thirty-five thousand
13  dollars.  She used the term consideration and
14  then she subsequently explained that she meant
15  thirty-five thousand dollars for herself.
16  Q.   And ultimately that is what the offer
17  the Defendant accepted was thirty-five thousand
18  dollars for Miss Brookins?
19  A.   That's correct.
20  Q.   I'm going to put before you Exhibit
21  Three which purports to be a notice of settlement
22  of this action signed by myself.
23       Do you recognize Exhibit Three as a
24  document, a copy of which you were served with --
25  A.   Yes, I do.

1   Q.   -- on or about March 16th of 2001?
2   A.   Right.
3   Q.   At that time that that notice was
4   served upon you, did you believe that the case of
5   Denise Brookins versus Marty Shoes had been
6   settled?
7   A.   That is correct.
8   Q.   I'm going to show you what has been
9   marked as Exhibit Four, purports to be a filing
10  style that is Plaintiff's Motion to Reschedule
11  Trial Date, and I just direct your attention to
12  the last sentence on that document which has been
13  highlighted for you which reads, "Consistently
14  coerced Plaintiff to settle case without fully
15  explaining details, pertinent details of the
16  case," presumably a reference to yourself.
17       My only question to you, sir, is that
18  statement in your opinion in any way correct?
19  A.   The answer is I did not coerce her to
20  settle the case and I did have discussions
21  numerous times concerning settlement and the
22  facts of her case, and that's about it.
23       In fact, we were at the mediation, I
24  believe, all morning and she put a settlement
25  demand on when she left, which I quite frankly

1  didn't think at the time that the Defendant was
2  going to meet.
3       Q.    Throughout your representation of Miss
4  Brookins, you furnished her with documentation of
5  the actions of the case and copies of the papers
6  that had been filed or exchanged by the parties
7  in the case; is that true?
8       A.    Right.
9             She had access to the file and she, in
10 fact, came into my office on numerous occasions
11 and copied documents, period.
12            MR. GABRIELLE:  Mr. Karlin, those are
13      all of my questions.
14            This deposition will be typed up.  You
15      have the right to read.
16            THE WITNESS:  I'll waive.
17            MR. GABRIELLE:  Thank you very much for
18      your time.
19
20            (Whereupon, signature and formalities
21      having been waived, the deposition concluded
22      at 1:25 o'clock p.m.).
23
24
25

```
 1                    CERTIFICATE
 2   STATE OF FLORIDA
 3   COUNTY OF BROWARD
 4           I, VALERIE LEHTO, Registered Professional
 5   Reporter, do hereby certify that I was authorized
 6   to and did stenographically report the foregoing
 7   deposition as hereinabove shown, and the testimony
 8   of said witness was reduced to computer
 9   transcription under my personal supervision and that
10   the record is a true record of the testimony given
11   by the witness.
12           I further certify that I am not a
13   relative, employee, attorney, or counsel of any of
14   the parties, nor am I a relative or employee of any
15   of the parties' attorney or counsel connected with
16   the action, nor am I financially interested in the
17   action.
18           Dated this 11th day of June, 2001.
19
20
21           _____
             VALERIE LEHTO
22           Registered Professional Reporter
             COMMISSION NO. CC759583
23           MY COMMISSION EXPIRES 8/22/2002
24
25
```

necessary in the circumstances, for ill-considered action under emergency conditions can jeopardize the client's interest.

A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person. See also rule 4-6.2.

**Thoroughness and preparation**

Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence. The lawyer should consult with the client about the degree of thoroughness and the level of preparation required as well as the estimated costs involved under the circumstances.

**Maintaining competence**

To maintain the requisite knowledge and skill, a lawyer should engage in continuing study and education.

### Rule 4-1.2. Scope of representation

(a) **Lawyer to Abide by Client's Decisions.** A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to subdivisions (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to make or accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

(b) **No Endorsement of Client's Views or Activities.** A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social, or moral views or activities.

(c) **Limitation of Objectives of Representation.** A lawyer may limit the objectives of the representation if the client consents after consultation.

(d) **Criminal or Fraudulent Conduct.** A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent. However, a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

(e) **Limitation on Lawyer's Conduct.** When a lawyer knows or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or by law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct.

Amended July 23, 1992, effective Jan. 1, 1993 (605 So.2d 252).

### Comment

**Scope of representation**

Both lawyer and client have authority and responsibility in the objectives and means of representation. The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means, the lawyer should assume responsibility for technical and legal tactical issues but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer's scope of authority in litigation varies among jurisdictions.

In a case in which the client appears to be suffering mental disability, the lawyer's duty to abide by the client's decisions is to be guided by reference to rule 4-1.14.

**Independence from client's views or activities**

Legal representation should not be denied to people who are unable to afford legal services or whose cause is controversial or the subject of popular disapproval. By the same token representing a client does not constitute approval of the client's views or activities.

**Services limited in objectives or means**

The objectives or scope of services provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. For example, a retainer may be for a specifically defined purpose. Representation provided through a legal aid agency may be subject to limitations on the types of cases the agency handles. When a lawyer has been retained by an insurer to represent an insured, the representation may be limited to matters related to the insurance coverage. The terms upon which representation is undertaken may exclude specific objectives or means. Such limitations may exclude objectives or means that the lawyer regards as repugnant or imprudent.

An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and law. Thus, the client may not be asked to agree to representation so limited in scope as to violate rule 4-1.1 or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue.

DEFENDANT'S

**Criminal, fraudulent, and prohibited transactions**

A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct. The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action. However, a lawyer may not assist a client in conduct that the lawyer knows or reasonably should know to be criminal or fraudulent. There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.

When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate. The lawyer is not permitted to reveal the client's wrongdoing, except where permitted or required by rule 4–1.6. However, the lawyer is required to avoid furthering the purpose, for example, by suggesting how it might be concealed. A lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required.

Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.

Subdivision (d) applies whether or not the defrauded party is a party to the transaction. Hence, a lawyer should not participate in a sham transaction; for example, a transaction to effectuate criminal or fraudulent escape of tax liability. Subdivision (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise. The last sentence of subdivision (d) recognizes that determining the validity or interpretation of a statute or regulation may require a course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.

**Rule 4–1.3.  Diligence**

A lawyer shall act with reasonable diligence and promptness in representing a client.

### Comment

A lawyer should pursue a matter on behalf of a client despite opposition, obstruction, or personal inconvenience to the lawyer and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. However, a lawyer is not bound to press for every advantage that might be realized for a client. A lawyer has professional discretion in determining the means by which a matter should be pursued. See rule 4–1.2. A lawyer's workload should be controlled so that each matter can be handled adequately.

Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer.

Unless the relationship is terminated as provided in rule 4–1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client but has not been specifically instructed concerning pursuit of an appeal, the lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter.

Comment amended July 23, 1992, effective Jan. 1, 1993 (605 So.2d 252).

**Rule 4–1.4.  Communication**

**(a) Informing Client of Status of Representation.** A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**(b) Duty to Explain Matters to Client.** A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Amended July 23, 1992, effective Jan. 1, 1993 (605 So.2d 252).

### Comment

The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so. For example, a lawyer negotiating on behalf of a client should provide the client with facts relevant to the matter, inform the client of communications from another party, and take other reasonable steps that permit the client to make a decision regarding a serious offer from another party. A lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable. See rule 4–1.2(a). Even when a client delegates authority to the lawyer, the client should be kept advised of the status of the matter.

Law Offices
STEWART LEE KARLIN, ESQ.
400 S.E. EIGHTH STREET
FORT LAUDERDALE, FLORIDA 33316

TEL: (954) 462-1201
FAX: (954) 462-3151

MEMBER OF THE BAR
FLORIDA & NEW YORK

NEW YORK OFFICE
9 MURRAY STREET, SUITE 7W
NEW YORK, NEW YORK 10007
TEL: (212) 227-2874
FAX: (212) 732-4334

March 15, 2001

Eric K. Gabrielle, Esq.
Holland & Knight
One East Broward Blvd., 13th Floor
P.O. Box 14070
Fort Lauderdale, FL 33302-4070

    Re: **Brookins v. Marty Shoes**
        Case No.: 00-6002-CIV-(Ungaro- Benages/Brown)

Dear Mr. Gabrielle:

    This letter shall confirm the following. At the mediation today, my client's settlement demand was thirty-five thousand dollars plus counsel fees. This letter shall confirm that the defendant has offered $42,500.00 shortly after the mediation concluded. Based upon the defendant's offer of $42,500, I will reduce my fee to $7,500. ( over fifty percent reduction) and thus the matter should be deemed settled based upon the settlement demand at the mediation with the standard settlement terms.

Very truly yours,

STEWART LEE KARLIN

SLK/nb



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6002-CIV-(UNGARO-BENAGES/Brown)

DENISE BROOKINS,

    Plaintiff,

vs.

MARTY SHOES, INC.,

    Defendant.

_____/

### NOTICE OF SETTLEMENT

Defendant Marty Shoes, Inc., gives notice that the parties to this action have resolved their dispute. A Joint Stipulation for Dismissal with Prejudice will be filed expeditiously.

    Respectfully submitted,

    HOLLAND & KNIGHT LLP
    Attorneys for Defendant
    One East Broward Boulevard
    Thirteenth Floor
    Post Office Box 14070
    Fort Lauderdale, FL 33302-4070
    (954) 525-1000
    (954) 463-2030 – fax
    e-mail: egabriel@hklaw.com

    By: _____
    Thomas H. Loffredo
    Florida Bar No. 870323
    Eric K. Gabrielle
    Florida Bar No. 160725



DEFENDANT'S EXHIBIT 3
6-8-01 UL

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by facsimile and United States mail to Stewart L. Karlin, Esq., Attorney for Plaintiff, 400 S.E. 8th Street, Fort Lauderdale, Florida, 33316, this 16th day of March, 2001.

                              HOLLAND & KNIGHT LLP
                              Attorneys for Defendant

                              By: _____
                                  Thomas H. Loffredo
                                  Florida Bar No. 870323
                                  Eric K. Gabrielle
                                  Florida Bar No. 160725

cc: Chambers of United States Magistrate Judge Peter R. Palermo

FTL1 #522128 v1

United States District Court
Southern District of Florida

Case No.00-6002 Civ (Ungaro-Benages/ Brown

Denise Brookins
Plaintiff,
   Vs
Marty's Shoes, Inc,

Defendants
— _____ ____/

### Plaintiffs Motion to Re-schedule Trial date

Plaintiff Denise Brookins unrepresented in the above case. Asks the court to re-set trial date. For the following reasons.

Allow Plaintiff adequate time to retaint counsel for the case.

Attorney Stewart Karl in failed to issue subpoenas for the witnesses.

Failed to depos witnesses in the above case.

Failed to secure funds from plaintiff in a timely manner. Attorney 5 days Prior to trial requests funds from plaintiff.

Failed to enter evidence during the discovery, that would be beneficial to plaintiff's case.
Consistently, coerced plaintiff to settle case, without fully explaining details pertinent details of the case.

Sincerly,
Denise Brookins
921 N.W 33 way
Ft Lauderdale, Florida 33311
954/792-2029

Honorable Ursula Ungaro Benages/Brown
Copies Mail and fax to
All involving Parties
Holland & Knight
Denise Brookins

DEFENDANT'S
EXHIBIT
4
6-8-01 VL

**PLAINTIFF SIGNED AFFADAVIT IN SUPPORT OF MOTION TO COMPLE OF NO SETTLEMENT REACHED BY PARTIE**

Plaintiff (Denise Brookins) unrepresented

On March 15, 2001 both parties of the above case Civ-6002) entered into a settlement conference. With Magistrate judge Peter Palermo. To plaintiff's understanding on settlement was reached by both parties. On March 16, 2001 plaintiff's former counsel "Stewart Karolin mailed a confirmation letter to Defendant's Marty's Shoes. Stating settlement.
I Denise Brookins had no documentation of former counsel's actions. Or authorization allowing former counsel to represent claimant as settled case. On March 19, 2001 claimant terminated Stewart Karlin's representation. Former counsel at the above settlement conference the negotiations weren't binding instructed plaintiff. Until signing. To my knowledge discussing possible settlement negotiations doesn't equal a settlement by her former counsel instructions. Former counsel had "NO Right". To confirm settlement without consulting client. And notifying client of his pertinent actions. Stewart Karlin "acted alone" and without client's approval. In the past former counsel has a repeated conduct pattern "initiating settlement. I also, have requested from former counsel give the courtesy of notifying client of all discussions. My first knowledge of "the settlement" came from a woman working in Judge Ungaro's office. At the time of calendar-call and /or Trial date. Brookins was placed outside courtroom and worked stated that your case" was settled". At time of settlement conference, and thereafter plaintiff has not   locuments supporting any settlement with Defendant's Marty's Shoes. Plaintiff has documentation supporting evidence that counsel has "acted alone in initiating settlement. Karlin has made several damaging errors in the above action. Further documentation will be forwarded at the courts request. Stewart Karlin "acted alone, and without client's approval in settlement negotiations with court, and defendants. With this truth in the above sign Denise Brookins pledges that the court NOT ENFORCE ANY AGREEMENT NOT Signed by plaintiff. After viewing several discrepancies in the case 00-6002 made by "karlin" Plaintiff dismissed "karlin" immediately.

Sincerely,
Denise E. Brookins
921 N.W. 33 way
Ft. Lauderdale, Florida
954/929-7160
954 792-2029

State of Florida / County of MIAMI-DADE
The foregoing instrument was acknowledged before me this
5/14/2001 by ELAINE D. BROOKINS
Personally Known ☐ OR Produced Ide ✗
Type of I.D. Produced B615-704-66-959-0


Edward D. Elliott
Commission # CC 866406
Expires Oct. 11, 2003
Bonded Thru
Atlantic Bonding Co., Inc.

DEFENDANT'S EXHIBIT 5 6-8-01